**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                                    )
WACHTEL, et al.,                                      )
                                                                    )          Civil Action No. 01-4183 (FSH)
                            Plaintiffs,                      )
                                                                    )
            v.                                                    )
                                                                    )
GUARDIAN LIFE INSUANCE, et al.,        )
                                                                    )
                            Defendants.                   )
_____)

_____
                                                                    )
McCOY,                                                      )
                                                                    )          Civil Action No. 03-1801 (FSH)
                            Plaintiff,                       )
                                                                    )          **OPINION**
            v.                                                    )
                                                                    )
HEALTH NET, INC. et al.,                          )
                                                                    )
                            Defendants.                   )
_____)

**SHWARTZ, Magistrate Judge**

**INTRODUCTION**

            This matter is before the Court as a result of Plaintiffs' objection to 23 of the 29

individuals the defendants have identified as trial witnesses in the proposed Final Pretrial Order.

The dispute first came before the Court during the final pretrial conference conducted on May 10,

2005.  At the May 2005 pretrial conference, plaintiffs asserted that 17 of the trial witnesses

defendants originally listed were not previously identified as individuals with knowledge relevant

1

to the case.  In the revised proposed Final Pretrial Order, submitted June 28, 2005, defendants

identified an additional 6 trial witnesses who plaintiffs claim were also not previously disclosed.[1]

Defendants argued that the identities of these individuals were disclosed in discovery materials.

As a result, the Court ordered defendants to provide a letter stating when each trial witness was

identified to plaintiffs and the manner in which their identity was disclosed.  The parties

submitted letters dated May 27, 2005, June 14, 2005, June 24, 2005, and June 29, 2005.  In

addition, the parties made oral arguments concerning this issue during the pretrial conferences

held on May 10, 2005 and July 11, 2005.

Defendants argue that these witnesses should be permitted to testify because they satisfied

their obligation under Federal Rule of Civil Procedure 26(a) to disclose to plaintiffs the identity

of any individuals known to have knowledge about the claims and defenses.  Specifically,

defendants contend that their Rule 26 disclosures, served upon plaintiffs in February 2002 and

July 2003, adequately disclosed to plaintiffs the identity of those with relevant knowledge by

stating that "individuals with knowledge included '[a]ll persons named in any document

produced by any party, all persons named in any pleading or depositions, and such other

individuals as further investigation and discovery may reveal.'" (Letter of Herve Gouraige, dated

May 27, 2005, at 1-2 ["Gouraige Letter"] (quoting McCoy Init. Discl. at ¶ 1(f); Wachtel Init.

Discl. at ¶ 1.))  Defendants assert that the lack of specificity in their disclosure statements was

---

[1]Although the defendants ultimately identified 29 witnesses in their proposed Final
Pretrial Order and the plaintiffs objected to 23 of those witnesses at the final pretrial conference,
plaintiffs' June 29, 2005 letter identifies only 22 undeposed witnesses, apparently having omitted
Gay Ann Williams from their list of objectionable witnesses.  Nonetheless, for purposes of
completeness the Court will include Ms. Williams in its analysis, bringing the number of
witnesses at issue to 23.

justified because the complexities of this litigation made a more detailed disclosure overly burdensome.  (Id. at 4.)

Defendants further argue that to the extent such disclosure was insufficient, the Rule 37(c)(1) sanction excluding trial testimony should not be imposed against them because plaintiffs have not been prejudiced, whatever prejudice plaintiffs might have suffered from defendants disclosure deficiency is easy to cure, any resulting disruption to the case's progress would be minimal, and any deficiency was not due to willful conduct or bad faith.  (Id. at 2-4.)  When asked about curing the potential prejudice by way of depositions, defendants orally opposed any additional depositions, arguing it was plaintiffs litigation strategy not to depose the witnesses and that they should be bound to that unwise decision. (Id. at 3.)

Plaintiffs argue that defendants failed to disclose as individuals with relevant knowledge the employees they now seek to have testify at trial.  Specifically, they contend that the defendants' "boilerplate" discovery response gave insufficient notice of the potential witnesses.  Plaintiffs urge the Court to exclude the undisclosed witnesses' testimony from trial pursuant to Rule 37 because the defendants have not provided a substantial justification for the disclosure defects and plaintiffs are prejudiced by not having notice of these witnesses to depose them.  As to deposing the 23 witnesses, plaintiffs have argued that because summary judgment motions have already been filed and the trial date is fast approaching, to now conduct these depositions would significantly disrupt the Court's carefully planned schedule.

## DISCUSSION

## I.    Rule 26

The Court will first address whether defendants discovery disclosure complied with

Federal Rule of Civil Procedure 26. Rule 26(a)(1)(A) provides:

> a party must, without awaiting a discovery request, provide to other
> parties: the name, and if known, the address and telephone number
> of each individual likely to have discoverable information that the
> disclosing party may use to support its claims or defenses, unless
> solely for impeachment, identifying the subjects of the information.

Fed. R. Civ. P. 26(a)(1)(A). Furthermore, Rule 26(e)(1) requires a party to supplement those

disclosures "if the party learns that in some material respect the information disclosed is

incomplete or incorrect. . . ." Fed. R. Civ. P. 26(e)(1). A purpose of Rule 26 is to "accelerate the

exchange of basic information about the case and to eliminate the paperwork involved in

requesting such information." Fed. R. Civ. P. 26(a), advisory committee notes, 1993. The

automatic disclosure requirement "streamline[s] discovery. . .thereby avoid[ing] the practice of

serving multiple, boilerplate interrogatories and document requests. . . ." Chalick v. Copper

Hosp./Univ. Med. Ctr., 192 F.R.D. 145, 150 (D.N.J. 2000). By automatically requiring the

immediate disclosure of the names and addresses of persons with relevant knowledge, Rule 26

meets another fundamental purpose of discovery, namely, to avoid "trial by ambush." See, e.g.,

Ierardi v. Lorillard, Inc., Civ. A. No. 90-7049, 1991 WL 158911, at *3 (E.D. Pa. Aug. 13, 1991)

(noting that a purpose of the discovery rules is to "avoid trial by ambush")(citation omitted); SPS

Techs., Inc. v. NL Indus., Inc., Civ. A. No. 85-1014, 1986 WL 5171, at *1 (E.D. Pa. May 2,

1986) (stating that "Rule 26(e) implements that policy by preventing a party from launching a

surprise barrage at trial of new facts not disclosed during discovery"). Thus, Rule 26's disclosure

requirements "should be applied with common sense. . . keeping in mind the salutory purposes

that the rule is intended to accomplish." Fitz, Inc. v. Ralph Wilson Plastics Co., 174 F.R.D. 587,

589 (D.N.J. 1997)(quoting Fed. R. Civ. P. 26(a), advisory committee notes, 1993).

Although no appellate court has addressed the degree of specificity required under Rule 26(a), United States v. Merck-Medco Managed Care, LLC, 223 F.R.D. 330, 333 (E.D. Pa. 2004), see also Sender v. Mann, 225 F.R.D. 645, 650 (D. Col. 2004)(noting the scarcity of cases on the topic), the rule itself provides some guidance and the advisory committee has made clear that the disclosure should "help focus the discovery that is needed, and facilitate preparation for trial or settlement." See Fed. R. Civ. P. 26(a), advisory committee notes, 1993.

Viewing defendants' disclosure in light of the plain language and articulated purposes of Rule 26(a)(1)(A), the Court concludes that defendants' boilerplate language is precisely the type of disclosure the Rule seeks to prevent. On its face, defendants' disclosure deviates from the requirements of the Rule in that it provides no names, addresses, or telephone numbers of any individual likely to have discoverable information. See Fed. R. Civ. P. 26(a)(1)(A). While defendants may assert that the witnesses' names appear in documents and the context in which the names appear reflect they are employed by, and thus reachable through, the defendants, this argument would be true of almost any person whose name was mentioned at any deposition or in any document. In light of the hundreds of thousands of pages of discovery, the occasional appearance of a person's name alone does not notify plaintiffs that the particular person had particular information that would warrant further inquiry. This lack of specificity, particularly in the context of the volume of discovery and the "meet and confer" sessions concerning who would be best to depose, has led plaintiffs down a particular deposition path and the late identifications of these witnesses, in effect, deprived plaintiffs of the opportunity of conducting discovery from potential witnesses.

Defendants attempt to excuse this conduct by arguing that because this is complex

litigation involving more than 400,000 pages of documents it would be especially burdensome to require the defendants to identify all of its employees with relevant knowledge. (See Gouraige Letter, at 4). The Court, however, is unpersuaded that either the complexity of this litigation or the volume of discovery involved relieves the defendants of their Rule 26 disclosure obligations. To the contrary, compliance with Rule 26 in complex cases is especially important because it helps all parties to focus discovery and facilitate the case's progress. See Fed. R. Civ. P. 26(a), advisory committee notes, 1993.

Furthermore, all but one of the witnesses at issue are defendants' own employees. (Gouraige Letter, at 3.) Accordingly, defendants were certainly in the best position to identify those employees who might possess information relevant to the claims and defenses and which employees have knowledge of facts so important as to warrant eventually being called as trial witnesses. Even if defendants were unable to identify these witnesses at the time of their initial Rule 26 disclosures, they were under a continuing obligation to update their disclosures as information became available. See Fed. R. Civ. P. 26(e)(1). Through the exercise of proper diligence, the identity of the witnesses defendants now seek to have testify at trial should have been learned and disclosed long before the May 2005 submission of the initial proposed joint Final Pretrial Order.

Moreover, the defendants have placed upon the plaintiffs the onus of having to identify from 9,400 of defendants' employees and hundreds of thousands of documents those individuals who might have knowledge of facts relevant to the case. Through these actions, the defendants did not "accelerate the exchange of basic information about the case." See Fed. R. Civ. P. 26(a), advisory committee notes, 1993. Clearly, plaintiffs were able to identify and depose some of

defendants' employees based upon information defendants provided, including representations

made during the parties' "meet and confer" sessions. (Letter of Barbara Quackenbos, dated June

14, 2005, at 8 ["Quackenbos Letter"]) Nonetheless, if defendants provided plaintiffs with a list

of the names of those employees who potentially possessed information, as is required by Rule

26, the discovery process would undoubtably have been more efficient and complete. See

Merck-Medco, 223 F.R.D. at 330 (holding that disclosure of a witness list containing 3,900

names violated neither the purpose nor intent of Rule 26 to provide an efficient start to relevant

discovery). The defendants did not do so and they have failed to comply with Rule 26.

## II.     Rule 37 Sanctions

Having concluded that defendants failed to comply with Rule 26, the Court now turns to

determining whether the violation requires the imposition of sanctions under Federal Rule of

Civil Procedure 37.

Rule 37(c)(1) is intended to provide a "strong inducement" for compliance with Rule 26,

Newman v. GHS Osteopathic, Inc., 60 F. 3d 153, 156 (3d Cir. 1995)(citations omitted), and to

discourage parties from "indulg[ing] in gamesmanship with respect to the disclosure

obligations." Chalick, 192 F.R.D. at 150 (citing Fed. R. Civ. P. 26(a), advisory committee notes,

1993). Specifically, Rule 37(c)(1) provides:

> [a] party that without substantial justification fails to disclose
> information required by Rule 26(a) or 26(e)(1). . . is not, unless
> such failure is harmless, permitted to use as evidence at a trial, at a
> hearing, or on a motion any witness or information not so
> disclosed. In addition to or in lieu of this sanction, the court, on
> motion and after affording an opportunity to be heard, may impose
> other appropriate sanctions.

Fed. R. Civ. P. 37(c)(1). "Substantial justification" requires "justification to a degree that could

satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." Fitz, 174 F.R.D. at 591 (citations omitted). In the absence of substantial justification, the witnesses could be excluded unless the failure to disclose the witness is harmless. Although the Rule does not define "harmless," the 1993 Advisory Committee Notes provide as an example of harmless a situation where there is an "inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties."[2] Fed. R. Civ. P. 37, advisory committee notes, 1993; see In re Mercedes-Benz Anti-Trust Litig., 225 F.R.D. 498, 506 (D.N.J. 2005). Mindful that Rule 37 provides for an "extreme sanction," courts exercise their discretion to exclude evidence only upon a showing of "willful deception or flagrant disregard of a court order by the proponent of evidence." Konstantopoulos v. Westvaco Corp., 112 F. 3d 710, 719 (3d Cir. 1997)(citations and internal quotations omitted). In exercising their discretion, courts consider four factors in determining whether to exclude evidence:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

Nicholas v. Pennsylvania State Univ., 227 F. 3d 133, 148 (3d Cir. 2000). At least one court has added the "importance of the evidence to the proffering party" as a fifth factor to consider in evaluating whether to exclude evidence. GlobespanVirata, Inc. v. Texas Instruments, Inc., No.

---

[2]The 1993 Advisory Committee Notes also provide as examples of harmless "the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures." Fed. R. Civ. P. 37, advisory committee notes, 1993; see In re Mercedes-Benz Anti-Trust Litigation, 225 F.R.D. at 506.

Civ. A. 03-2854, 2005 WL 1638136 at *2 (D.N.J. Jul. 12, 2005). Thus, the Court must consider

if substantial justification exists for the failure to identify the witnesses. If there is no substantial

justification or if the non-disclosure is not harmless, then the Court must apply the five factors to

determine if exclusion is appropriate.

### A.    Witnesses Relevant to Rule 37 Analysis

The Court recognizes that it would be inappropriate to apply Rule 37's trial testimony

exclusion sanction to a Rule 26(a)(1)(A) violation when the undisclosed witnesses' names were,

nonetheless, known to all parties and hence harmless. See Fed. R. Civ. P. 37, advisory

committee notes, 1993. As such, before proceeding any further, the Court must first determine

whether or not plaintiffs knew, despite defendants' disclosure failures, the identity of any of the

23 witnesses at issue.

Having considering defendants' letter, in which they identify the source that provided the

plaintiffs with notice of each individual witnesses' identity (see Gouraige Letter, at 4-15), the

Court discerns five categories in which to group the 23 witnesses. The first category involves

witnesses who have either testified or submitted certifications to the Court. These witnesses

have been disclosed and the subject of their testimony is embodied in a sworn statement. These

witnesses are Franklin Tom, Bruce Anderson, Nancy Bushnell, Lisa Dietz, Nancy Starts, and Gay

Ann William. Franklin Tom testified at a hearing before the Court, and in the presence of

plaintiffs, on February 7, 2005 about the exact issues on which defendants expect him to testify

at trial. (See Gouraige Letter, at 14). Since the hearing was conducted approximately one month

before the close of discovery, plaintiffs had time to take his deposition and investigate his

testimony. Accordingly, it would be inappropriate to prohibit Mr. Tom from testifying at trial.

Bruce Anderson,[3] Nancy Bushnell, [4] Lisa Dietz,[5] Nancy Starts,[6] and Gay Ann Williams[7] produced certifications pursuant to a court order. Although the certifications were disclosed after the March 10, 2005 discovery deadline, the certifications set forth the topics about which these individuals will testify and plaintiffs have had time to prepare to confront these witnesses. In short, because the certifications identify the employee and embody a sworn statement regarding the topics about which they would testify, the Court will not exclude their testimony but will limit their testimony to the topics in their certifications. Moreover, because these witnesses were not identified during the discovery period, plaintiffs may depose these individuals if they wish. The defendants shall arrange for these individuals to appear in New Jersey if the plaintiffs want

---

[3]Mr. Anderson signed two certifications regarding defendants' production of documents relating to regulatory investigations of out-of-network activities. (Gouraige Letter, at 6.)

[4]Ms. Bushnell submitted a certification stating that she was "the Director, Product Development and Management for Health Net of the Northeast, Inc." and that her team "had located responsive documents relating to, among other things, sales and marketing of [defendants'] out-of-network benefits and Evidences of Coverage," which are documents critical to her expected testimony. (Gouraige Letter, at 6.)

[5]Ms. Dietz's certifications state that she is the "Director of Product Development for [defendants]" and that her duties include "the oversight responsibility for compliance, appeals, and grievances." (Gouraige Letter, at 9.)

[6]Nancy Starts's certification indicates that "she discussed the divested Health Net plans of Colorado, New Mexico, Texas, Oklahoma, Louisiana, Washington, Utah and Florida. She gave details surrounding the divestiture of each plan and/or its withdrawal from a particular market" and this is "almost exactly" what she will testify about at trial. (Gouraige Letter, at 13.)

[7]In addition to being mentioned in at least four deposition, Ms. Williams submitted a certification which the defendants represent is directly on point with her trial testimony which will apparently involve regulatory compliance and the delegation oversight committee. (See Gouraige Letter, at 14-15.)

to depose these individuals in person.[8]

On the other end of the spectrum is the second category of witnesses, including Kelly Shah and Katie O'Mara, who were never disclosed in a formal way. Based upon the defendants' letter, Ms. O'Mara's name appears in documents from Pascack Valley Hospital that were disclosed after the discovery period and Ms. Shah's name appears in no documents disclosed during the discovery period and was not mentioned by a single deponent. Consequently, the Court has little difficulty concluding that defendants' failure to timely disclose Ms. Shah and Ms. O'Mara violates Rule 26. Nonetheless, Ms. O'Mara is expected to testify about medical records concerning treatment a plaintiff received. This is obviously a topic uniquely familiar to that plaintiff. Thus, while Ms. O'Mara's name might be unfamiliar, the information known to this non-party is well known to plaintiffs. Therefore, the Court will permit Ms. O'Mara to testify and will consider the applicability of Rule 37 sanctions with respect to Ms. Shah.

The third category includes witnesses whom defendants failed to provide the Court with any basis upon which to conclude that plaintiffs were provided any notice of their existence. Specifically, plaintiffs list Steve Guarino, Ellen Landolf, Julie Lyons, George Miro, David Olson, and Paul Sedgwick as objectionable witnesses, (Letter of Quackenbos, dated June 29, 2005, at 1), and defendants have not provided any information upon which the Court could conclude that their names were disclosed to the plaintiffs. Accordingly, the Court will consider imposing Rule 37 sanctions regarding these 6 witnesses.

The fourth category of witnesses captures defendants' employees whose names only

---

[8]Because of the tardy disclosure, the Court is requiring the defendants to produce the witnesses in New Jersey, unless the parties agree to conduct any requested depositions via telephone or videoconference.

occasionally appear among the more than 400,000 pages of documents or who are referred to only in passing during another's deposition.[9]  Specifically, this category includes Nan Broaddus,[10] Robin Carroll,[11] Widsom Lu,[12] and Sandy Tuttobene.[13]  Although defendants provide citations to documents in which their names appear, even the most often referenced employee, Ms. Broaddus, only appears in approximately 100 pages, roughly .025% of the total number of pages produced.  Given the hundreds of thousands of pages of both documents and depositions transcripts, and considering that defendants employ some 9,400 people, the Court cannot conclude that plaintiffs had enough information to identify those four people as having relevant knowledge.  To do so would require plaintiffs to have found the proverbial needle in the haystack.  As such, the Court will consider whether or not Rule 37 exclusion of these four employees is warranted.

The final category includes Lauren Casalveri, Sylvia Hay, Bill Lamoreaux, Robert Little, and Frank Partridge, all who seemed to receive somewhat more attention during the depositions

---

[9]Witnesses qualifying for this category were referenced in two or fewer depositions and, based on the deposition citations defendants provided, those references appeared to be quite brief.

[10]Timothy Mondon was shown an organization chart during his deposition that included Ms. Broaddus's name. (Gouraige Letter, at 7)

[11]During his deposition, Timothy Mondon was asked to identify Ms. Carroll, "who was listed on an agenda for the 'National Out-of-Network Provider Cost Saving Initiative." (Gouraige Letter, at 7.)

[12]Although Lu's predecessor appears to have received a fairly significant amount of attention in multiple depositions, Lu was only briefly mentioned during Marv Rich and Chris Wing's deposition.

[13]Tuttobene was not mentioned during any deposition and only appears in approximately 8 pages of documents.

of others. Although it is true that all five of these employees' names were mentioned multiple times in multiple depositions and the task of identifying those included in this category would have been marginally less onerous than identifying those in the previous category, the Court is unwilling to find that plaintiffs had sufficient information from which to glean that these five witnesses would likely be trial witnesses. Indeed, even with the additional tidbits of deposition testimony, plaintiffs still would have faced tremendously poor odds of identifying these witnesses. As a result, the Court will determine whether or not these five employees should be excluded under Rule 37.

To summarize, the Court will not exclude the testimony of Mr. Anderson, Ms. Bushell, Ms. Dietz, Ms. Starts, Ms. Williams, Mr. Tom, and Ms. O'Mara because, despite defendants disclosure defect, plaintiffs had notice that these individuals possessed relevant information and were provided with information concerning the topics about which the witnesses may testify. Having found, however, that defendants did not adequately disclose, and hence plaintiffs could not have been reasonably expected to believe, Ms. Shaw, Ms. Broaddus, Ms. Carroll, Ms. Lu, Ms. Tuttobene, Ms. Casalveri, Ms. Hay, Mr. Lamoreaux, Mr. Little, Mr. Partridge, Mr. Guarino, Ms. Landolf, Ms. Lyons, Mr. Miro, Mr. Olson, and Mr. Sedgwick possessed relevant information, the Court will now consider whether exclusion of their trial testimony is appropriate under Rule 37.

### B.     Substantial Justification

Defendants argue that they were substantially justified in not adequately disclosing their employees with relevant knowledge because of the complexities of this litigation and the large amount of documentary disclosure. As stated above, however, the more complex the litigation,

the greater the need for strict compliance with disclosure obligations. The goals of the Federal Rules of Civil Procedure, namely to facilitate the prompt, efficient, inexpensive, and expeditious resolution of cases, see Fed. R. Civ. P. 1, require the parties to strive to streamline proceedings and facilitate full and complete disclosure. There can be no dispute that identifying witnesses advances these goals and there is nothing before this Court to indicate the existence of any legitimate dispute over whether greater specificity in the defendants' Rule 26 disclosure was required. See Fitz, 174 F.R.D. at 591 (holding substantial justification existed in not disclosing discovery material when there was a genuine dispute over whether an issue was alleged with the required specificity to support a claim). The issues in the case, while many, are defined and known to the parties, and the defendants had an obligation to disclose to plaintiffs the identity of anyone with relevant information. Here, they failed to discharge this obligation not just with respect to one or two witnesses, but did so with respect to 22 witnesses, all of whom are their own employees. The defendants were not only in the best position but they were the only ones in a position to know which of their employees had relevant information. The sheer number of employees is not a reason that they should be relieved of investigating and timely disclosing persons with knowledge. The defendants have not shown substantial justification for their violation.

### C. Prejudice or Surprise

Having found there is no substantial justification for the defendants' failure to have identified the witnesses, as required under Rule 26 or in response to an interrogatory, the Court now considers the prejudice to the plaintiffs. In assessing prejudice, courts "'should not speculate on how the [surprised party] would have used the additional information disclosed';

rather prejudice exists when the surprised party likely would have conducted discovery differently."  <u>GlobespanVirata</u>, 2005 WL 1638136, at *3 (citing <u>In re Mercedes-Benz</u>, 225 F.R.D. at 506).  Defendants contend that plaintiffs are not prejudiced by defendants' deficient Rule 26 disclosure because plaintiffs have had sufficient time and opportunity to identify relevant witnesses through depositions and documents.  (Gouraige Letter, at 3).  Further, defendants appear to assert that since the disclosure defects involve only "a few witnesses, all of whom are defendants' employees," their deviation from Rule 26 is relatively minor, especially in light of the vast amount of discoverable material involved in this case. (<u>Id.</u>)

The prejudice caused to plaintiffs by defendants' failure to timely disclose the names of the 16 witnesses they now seek to have testify at trial is obvious.[14]  As noted earlier, defendants' late disclosure has, effectively, deprived plaintiffs of the opportunity to conduct thorough fact investigation and to depose the witnesses.  Now, on the eve of trial, defendants seek to substitute the individuals who where deposed with witnesses previously unidentified to plaintiffs.  The result is that plaintiffs would be faced with a trial involving witnesses when the full substance of their knowledge is unknown.  <u>See</u> <u>Gallup, Inc. v. Kenexa Corp.</u>, No. Civ. A. 00-5523, 2003 WL 22097495, at *4 (E.D. Pa. May 28, 2003)(finding prejudice where defendants failure to disclose a witness both prevented plaintiff from having an opportunity to depose the witness and caused plaintiff to expended additional time and resources).

The plaintiffs have also been prejudiced because it is "likely [they] would have

---

[14]The Court notes that the defendants actually sought to call 23 previously undisclosed witnesses. The Court has determined that one witness (Mr. Tom) was sufficiently disclosed and the plaintiffs had sufficient information about six others (Mr. Anderson, Ms. Bushnell, Ms. Dietz, Ms. Starts, Ms. Williams, and Ms. O'Mara) to find the Rule 26 violation to be harmless. Thus, there are 16 witnesses at issue for Rule 37 exclusion purposes.

conducted discovery differently" had they known the identity of individuals with information so material that defendants now seek to have them testify at trial. See In re Mercedes-Benz, 225 F.R.D. at 506 (holding plaintiffs were prejudiced by defendants failure to disclose the names of persons with relevant knowledge because plaintiffs would have questioned such person had they known of their existence). Indeed, plaintiffs represent to the Court that the parties held a series of meetings in order to narrow the number of depositions and

> not once during any of those conferences did defense counsel alert [p]laintiffs to the possibility that any of these 17 individuals were potential trial witnesses. Rather, negotiations resulted in our taking of over 30 depositions of Health Net employees, only to be told now that we had not arrived at the proper witness as a product of those negotiations.

(Quackenbos Letter, at 3.) Thus, in reliance on the disclosures and representations, substantial discovery was conducted of witnesses who defendants themselves seem to believe are not the most well-versed on the topics. It would be improper to allow a party to identify for depositions those who have "second best" knowledge and hold back those who have the most complete information. To permit this tactic would place an imprimatur on allowing parties to shield from discovery those with the knowledge that makes them competent trial witnesses. Here, one can infer defendants identified "second best" witnesses rather than all witnesses with relevant knowledge and this led the plaintiffs down a path to unnecessarily depose multiple individuals. The plaintiffs expended time and resources preparing for and conducting depositions and have relied on their content because they were not aware of defendants' employees with better or more complete knowledge of their claims and defenses. Thus, plaintiffs have been prejudiced.

The prejudice is only intensified by the large number of undisclosed witnesses. In the

context of this case, the Court does not agree with defendants that 16 witnesses are only "a few" witnesses. (<u>See</u> Gouraige Letter, at 3 (arguing that there is "simply no prejudice to plaintiffs by any failure to disclose the identity of a few witnesses, all of whom are defendants' employees.")) This is especially apparent considering that the additional witnesses represent approximately half of the number of witnesses plaintiffs have actually deposed[15] and more than half the number of witnesses defendants listed for trial.

**D.     Ability to Cure Prejudice & Disruption to Orderly and Efficient Trial of the Case**

In their written submissions, defendants asserted that any prejudice plaintiff may have suffered from their Rule 26 violation can be cured simply by having the parties now take depositions of the previously undeposed witnesses.[16] Further, defendants argue that these depositions could be completed before trial, with only slight disruption to the case's progress.

Defendants are correct that, in certain circumstances, prejudice caused by the late production of evidence can be cured by requiring additional depositions. <u>See</u> <u>GlobespanVirata</u>, 2005 WL 1638136, at *4 (denying evidence exclusion where deposition could easily cure prejudice and there was no indication of bad faith). Given the very late stage in which defendants finally identified these witnesses and the large number of witnesses whose identity was buried among the 400,000 documents and thousands of deposition pages, there is little question that to now conduct an additional 16 depositions would significantly disrupt these

---

[15]Both parties agree that plaintiffs have conducted 33 depositions. (<u>See</u> Gouraige Letter, at 2; Quackenbos Letter, at 3.)

[16]Interestingly, although defendants argue in favor of conducting depositions in their letter, both parties argued against permitting additional depositions at oral argument.

proceedings.  See In re TMI Litig., 193 F.3d 613, 721-22 (3d Cir. 1999)(excluding expert witness

from trial where disclosure occurred after discovery deadline and District Court was unwilling to

postpone trial date), Konstantopoulos, 112 F. 3d at 719-20 (excluding testimony of a witness

disclosed at the pretrial conference held over one year after discovery deadline and three weeks

before trial); cf. In Re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 793 (3d Cir. 1994)(holding

exclusion inappropriate where although disclosure was made one month after a court imposed

deadline, there were still sixty days before the end of the discovery period, four months until the

trial date, and "abundant" time to depose), Tolerico v. Home Depot, 205 F. R. D. 169, 177 (M.D.

Pa. 2002)(declining to exclude evidence where the "case was not scheduled for trial when the

untimely disclosure was made so that the progress of [the] case was not materially impeded by

the Rule 26(a) violation" and where additional deposition could cure the prejudice).  Here,

defendants did not identify the 16 witnesses at issue until they disclosed their portion of the

proposed pretrial order to the plaintiffs in May 2005, almost five months after all documents

were to be produced on January 10, 2005 and almost two months after discovery ended on March

10, 2005.  Further, summary judgment motions have already been filed and, although the

originally scheduled September 19, 2005 trial date has been adjourned, the parties have been

ordered to be ready for trial upon seven days notice from the Court.  (Order dated August 4,

2005.)  Presumably, were the Court to allow 16 additional depositions, the parties undoubtably

would want to amend their summary judgment motions to include resulting testimony.  To allow

the reopening of the summary judgment record would unduly delay the proceedings for a reason

that could have been avoided and would delay the trial, which could potentially begin shortly.

As such, the Court concludes that in other circumstances depositions might cure the prejudice

caused to plaintiffs, but time simply does not permit 16 depositions to be conducted in this case.[17]

Moreover, it would be unfair to require plaintiffs to re-prepare for depositions while in the midst of trial preparation. Furthermore, the cost and time to commence 16 depositions is burdensome and unjustified particularly since these witnesses have been within defendants' control and known to them either since the inception of the litigation or during the discovery period. For all of these reasons, prejudice and disruption militate in favor of excluding the 16 witnesses.

**E.    Bad Faith/Wilfulness in Failing to Comply with a Court Order or Discovery Obligation**

Defendants argue that there is no basis upon which the Court can find their Rule 26 violation was willful or in bad faith because plaintiffs never specifically asked defendants to disclose their trial witnesses.[18] (See Gouraige Letter, at 2.) While a specific request was not

---

[17]The Court also notes that the number of depositions that defendants suggest could cure any prejudice exceeds the maximum number of depositions normally contemplated under Federal Rule of Civil Procedure 30 that should occur during discovery. This further demonstrates the extraordinary post-discovery efforts the defendants suggest plaintiffs would have to undertake to cure the prejudice from the Rule 26 violation.

[18]Defendants contend that neither Rule 26 nor plaintiffs' Interrogatory #13, which requested defendants to

> identify all persons with knowledge concerning the factual
> allegations contained in the First Amended Complaint and these
> Interrogatories, and for each person, set forth the specific factual
> allegations of which that person has knowledge,

required them to disclose the names of witnesses they intended to call at trial (Letter of Gouraige, dated June 24, 2005, at 1 (emphasis in original)). The Court, however, has concluded that defendants' initial disclosure statement under Rule 26(a)(1) was deficient, not its pretrial trial witnesses disclosure obligations under Rule 26(a)(3). Rule 26(a)(3) applies to "information customarily needed in final preparation for trial" as opposed to during discovery and is more akin to an election as to which individuals with knowledge will likely be called at trial. See Fed. R. Civ. P 26(a)(3), advisory committee notes, 1993 (indicating that "[t]hose who will probably be called as witnesses should be listed separately from those who are not likely to be called. . . .").

made for the names of trial witnesses, the entire purpose of Rule 26 is to facilitate trial and avoid trial by ambush. Moreover, to be a competent trial witness, the person must have knowledge of the facts relevant to the claims and defenses. Hence, Rule 26 contemplates that those who fall within Rule 26(a)(1) includes trial witnesses. Furthermore, based upon the summary of testimony expected from many of these witnesses, it appears that the defendants are attempting to substitute the witnesses who were deposed with undeposed witnesses. In light of the "meet and confer" sessions held to identify deponents, this amounts to a "bait and switch" tactic that directly conflicts with Rule 26 and represents the very "trial by ambush" the rules seek to prevent. See Ierardi, 1991 WL 158911, at *3.

Moreover, even assuming the failure to ask for the names of trial witnesses excuses the defendants' late disclosure, the defendants failed to even identify the names of those with knowledge of the claims and defenses in this case and clearly the 16 witnesses are subject to the automatic disclosure requirement of Rule 26(a)(1). Furthermore, the non-disclosure occurred in the context of a history of noncompliance with the Rules and Orders of this Court. This repeated behavior provides a basis for the Court to infer that the vague, noncommital disclosure was a tactic to avoid being boxed into only calling those individuals whose names were specifically listed. Indeed, the history of dilatoriness and disregard for court orders gives rise to a strong inference of bad faith. Just like the In Re TMI Litig. and Konstantopoulos Courts, this Court has been confronted with a "pattern of [conduct] that constitute[s] a flagrant violation of pretrial orders." See In Re TMI Litig., 193 F.3d at 722 (evidence excluded where party continually ignored court's discovery deadlines), Konstantopoulos, 112 F.3d at 719 (excluding expert testimony because of "flagrant disregard of a court order" where discovery had been complete for

over one year and witnesses were not disclosed until the pretrial conference). The docket reflects that the Court was required to enter numerous orders to compel disclosure of responsive documents.[19] By way of example, the Court had to enter orders because the defendants willfully failed to timely produce documents relating to the California DMHC investigation. (See Order, dated March 1, 2005.) Moreover, orders were entered because of defendants failure to provide information about proceedings involving the New Jersey Department of Banking and Insurance. (See Order, dated December 17, 2004.)[20]

Thus, defendants' failure to properly identify these witnesses did not happen in isolation. Rather, the defendants have repeatedly failed to timely disclose relevant information and seemingly withheld responsive material until a time when plaintiffs could do nothing to investigate their contents. Viewing the totality of defendants' conduct, it appears that defendants willfully attempted to thwart the disclosure of evidence and witnesses and their conduct warrants the Rule 37 sanction of excluding these witnesses.

### F.  Importance of Witnesses

The Court has also considered the impact of excluding the witnesses on defendants' ability to present their case and defend themselves. A comparison of the summary of the expected testimony of these witnesses with those who have been deposed shows that the defendants are able to call previously identified witnesses to testify about the subjects that would

---

[19]These orders are incorporated herein by reference.

[20]Most recently, the plaintiffs have asserted that defendants' motion for summary judgment relied upon and referenced thousands of pages of documents that were never produced to plaintiffs during discovery and the defendants have listed hundreds of pages of documents as trial exhibits that were not disclosed during discovery. The plaintiffs request to strike these documents is pending before the Hon. Faith S. Hochberg.

have been discussed by the precluded witnesses. Thus, the precluded witnesses appear to offer nothing that has not been addressed by the identified witnesses. Indeed, defendants have acknowledged that "[t]he anticipated matters about which the individuals are expected to testify are ones upon which plaintiffs have received discovery, either through deposition or through documents." (Gouraige Letter, at 3). As such, the defendants will not be prejudiced by excluding the 16 witnesses. In short, the sanction of exclusion avoids unduly prejudicing plaintiffs, keeps the playing field even, and does not prejudice the defendants.

## **<u>CONCLUSION</u>**

For all of the above reasons, the Court will permit defendants to call the following trial witnesses: Mr. Anderson, Ms. Bushell, Ms. Dietz, Ms. Starts, Ms. Williams, Mr. Tom, and Ms. O'Mara. The Court will bar the following witnesses from testifying at trial: Ms. Shah, Ms. Broaddus, Ms. Carroll, Ms. Lu, Ms. Tuttobene, Ms. Casalveri, Ms. Hay, Mr. Lamoreaux, Mr. Little, Mr. Partridge, Mr. Guarino, Ms. Landolf, Ms. Lyons, Mr. Miro, Mr. Olson, and Mr Sedgwick. An order consistent with this Opinion will be entered.


Dated, August 31, 3005


                                   s/Patty Shwartz
_____U.S. Magistrate Judge
_____