## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENEE McCOY, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC. and HEALTH NET OF NEW JERSEY, INC.,<br>    Defendants. | Civil Action No. 03-cv-1801 (FSH)(PS) |
| ZEV and LINDA WACHTEL, individually and on behalf of their minor son, TORY WACHTEL, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>GUARDIAN LIFE INSURANCE CO. OF AMERICA, HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC. and HEALTH NET OF NEW JERSEY, INC.,<br><br>    Defendants. | Civil Action No. 01-cv-4183(FSH)(PS) |

## CERTIFICATION OF JAMES E. DELBELLO, ESQ.

This Certification is provided in response to the Court's Order dated December 21, 2005

("the December 21 Order" or "the Order").

## I. **Preliminary Statement**

 1. Defendants are providing this Certification to describe to the Court the process through which they responded to the December 21 Order and to provide the chronology requested regarding "Plaintiffs' Integrity 168."

 2. The December 21 Order was received by counsel for Defendants on the evening of December 21, 2005. Given the short time that they had to comply with the Order during the

holiday season, Defendants did not have time to redact portions of the documents being produced which are privileged or otherwise protected or not responsive to the Order.[1]

3.    Because these documents may contain privileged or otherwise protected material, Defendants continue to assert that this Court, as the fact-finder in these two nationwide ERISA class actions, should not review the documents being produced *in camera*. The Court should instead refer these documents to another Article III Judge for the reasons stated in Defendants' Motion Requesting that the Court Refer the Review of Materials and/or Information Protected by the Attorney-Client Privilege or Constituting Attorney Work Product to Another Article III Judge, filed on December 13, 2005.

4.    Defendants object to the December 21 Order and by making the production ordered by the December 21 Order and responding to the December 21 Order, Defendants are not waiving any privilege or other protections and reserve all of their rights.

## II.    <u>Documents Seeking Responsive Discovery</u>

5.    In the December 21 Order, the Court "**ORDERED** that Defendants shall deliver to chambers no later than December 29, 2005, for the Court's *in camera* review, all documents, memoranda, e-mails, and communications of any kind, in chronological order, reflecting requests made by Hilda Gonzalez, Scott Gilmore, and other in-house legal staff at Health Net, to employees of Health Net entities seeking responsive discovery."

6.    To respond to this request, counsel for Health Net have searched Hilda Gonzalez's email file, which includes 87,629 emails. We ran the search terms "McCoy," "Wachtel," and "discovery" ("the Search Terms") through Ms. Gonzalez's e-mail file. These

---

[1] Defendants did, however, redact the transmittal messages with outside counsel regarding compliance with the December 21 Order.

searches yielded 16,768 hits. We then reviewed the hits, and this search and review process yielded 2,627 responsive e-mails, which are being produced.

7.      Defendants contacted Scott Gilmore, and instructed Mr. Gilmore to provide us with every document that he has regarding the *McCoy* and *Wachtel* cases. Mr. Gilmore sent us his entire McCoy and Wachtel files (four boxes). This file was reviewed for documents responsive to the December 21 Order, and the responsive documents are being produced. We also ran the Search Terms through the 44,377 emails of Scott Gilmore that are in our possession. The Search Terms yielded 4,258 hits. We then reviewed the 4,258 hits. This process yielded 1,072 responsive e-mails, which are being produced.

8.      Defendants contacted Paul Dominianni and asked him to search all of his files for any documents, including e-mails, responsive to the December 21 Order. Mr. Dominianni provided us with responsive documents, and they are being produced. We also ran the Search Terms through the 31,199 emails of Paul Dominianni that are in our possession. The Search Terms yielded 1,572 hits. We then reviewed the 1,572 hits. This process yielded 344 responsive e-mails, which are being produced.

9.      Defendants contacted Eileen O'Donnell, through her counsel, and asked her to search all of her files for any documents, including e-mails, responsive to the December 21 Order. Ms. O'Donnell provided us with responsive documents, and they are being produced. We also ran the Search Terms through the 78,403 emails of Eileen O'Donnell that are in our possession. The Search Terms yielded 2,456 hits. We then reviewed the 2,456 hits. This process yielded 713 responsive e-mails, which are being produced.

10. Defendants contacted Elizabeth Guerin and asked her to search all of her files for any documents, including e-mails, responsive to the December 21 Order. Ms. Guerin provided us with responsive documents, and they are being produced.

11. Defendants contacted Stefanie Waddick. Ms. Waddick is a legal assistant for Health Net, Inc. who has worked with Ms. Gonzalez and outside counsel in responding to discovery in these cases. Defendants asked Ms. Waddick to search all of her files for any documents, including e-mails, responsive to the December 21 Order. Ms. Waddick provided us with responsive documents, and they are being produced. We also ran the Search Terms through the 73,032 emails of Ms. Waddick that are in our possession. The Search Terms yielded 5,916 hits. We then reviewed the 5,916 hits. This process yielded 2,541 responsive e-mails, which are being produced.

12. Defendants contacted Victoria Choma. Ms. Choma is a legal assistant for Health Net of the Northeast, Inc. who has worked with Ms. Gonzalez and outside counsel in responding to discovery in these cases. Defendants asked Ms. Choma to search all of her files for any documents, including e-mails, responsive to the December 21 Order. Ms. Choma provided us with responsive documents, and they are being produced.

13. In sum, in responding to the December 21 Order, Defendants have searched over 300,000 documents. Defendants reviewed the contents of several boxes of hard-copy documents and more than 30,000 e-mails. Defendants are producing over 7,300 responsive e-mails in addition to responsive hard copy documents. The responsive e-mails and hard-copy documents have yielded over 22,000 total pages (approximately 10 boxes), not including the attachments to the e-mails. With the attachments, the total pages would exceed 86,000. The responsive documents, including the e-mails with their attachments, are also being provided on 8 disks

which contain 3.69 gigabytes of data. The process of searching, reviewing and preparing these documents for production took over 700 hours and will cost Defendants over $135,000.[2]

**III.    The Production of "Integrity 168"**

14.    In the December 21 Order, the Court also "**ORDERED** that Defendants provide to the Court, no later than December 29, 2005, a detailed chronology of what searches were done and what requests were made that resulted in the production of documents numbered PHS8136080-PHS8136083 (labeled as Plaintiffs' Integrity 168)."

15.    On November 22, 2005, as part of the Rule 37 hearing, counsel for Plaintiffs showed Eileen O'Donnell "Integrity 105" (a copy of which is attached as Exhibit B) which included an October 22, 2002 e-mail which was sent by Patricia Normington to Pennell Hamilton, Eileen O'Donnell, Dan Sibol and others (PHS 7051144), as well as actuarial summaries (PHS 7051145-47). Nov. 22, 2005 Tr. at 101:11-25. Counsel for Plaintiffs represented that the actuarial summaries were attachments to the October 22, 2002 e-mail. *Id.* at 101:24-25.

16.    The documents which comprise "Integrity 105" were located in Dan Sibol's HIAA file in late August 2005 and produced on September 12, 2005. The documents were produced in sequential bates-numbered order. They were not produced as a single stapled or clipped document, and they were not produced copied on both sides of each page. The Plaintiffs

---

[2] Defendants acknowledge that it is possible that the above-described search did not locate every communication (including telephone calls) that reflects requests made by all in-house legal staff at Health Net to employees of the Health Net entities seeking responsive discovery. However, Defendants believe that this effort constitutes the most comprehensive search possible given the time constraints imposed by the December 21 Order. Due to these time constraints, we are providing responsive documents in chronological order by individual database. A legend that explains which documents came from which individual is attached as Exhibit A. In addition, the hard-copy production does not include attachments to the responsive e-mails (which accounts for the gaps in bates-ranges for the hard-copy production). The production of attachments will yield significant additional material. The attachments are being provided to the Court on disks today, and Defendants will provide hard copies of the e-mails with the attachments when they are received from the vendor, unless the Court directs otherwise.

have apparently manipulated "Integrity 105" in a manner that tends to distort the record and mislead witnesses.

17. At the November 22, 2005 hearing, Ms. O'Donnell testified that she did not know if the actuarial summaries included in "Integrity 105" were attachments to the October 22, 2002 Patricia Normington e-mail. *Id*. at 102:1-4.

18. In response to the Court's question, counsel for Health Net explained that he did not believe that the actuarial summaries were attached to this e-mail. *Id*. at 102:15-23. Counsel for Health Net also explained that he did not believe that the actuarial summaries were produced on two-sided copies. *Id*.

19. After some additional discussion of this issue, the Court directed Health Net to find out what, if anything, the actuarial summaries were part of, and to trace back to its source the October 22, 2002 document. *Id*. at 104:22-105:5.

20. After the Thanksgiving holiday and the November 28, 2005 deposition of Karen Davezac, on December 1, 2005, counsel for Defendants (James E. DelBello) contacted Donald Hall of Health Net regarding the October 22, 2002 document. Mr. Hall is a member of "Server Management Services," for the Northeast of Health Net, Inc. Mr. Hall is knowledgeable regarding the e-mail systems at Health Net. Mr. Hall was sent a copy of the October 22, 2002 document on December 1, 2005.

21. Later on December 1, 2005, Mr. Hall reviewed the document and informed counsel that he was able to determine that it was sent from the Health Net of the Northeast, Inc.'s predecessor e-mail system know as the GroupWise system on the date shown. *See* Certification of Donald Hall at ¶3, a copy of which is attached as Exhibit C.

22.     Health Net of the Northeast, Inc. ("HN-NE") operated on a GroupWise e-mail system from June of 1999 until June through October 2003, during which time the majority of HN-NE users were converted to a Lotus Notes e-mail system. *Id.* at ¶4.

23.     On December 1, 2005, counsel for Defendants (again, Mr. DelBello) asked Mr. Hall to find and restore the back up database in an attempt to locate the October 22, 2002 document and determine whether it had any attachments. Mr. Hall explained that the e-mail would be identical for all recipients regardless of which post office they were in and suggested checking Pennell Hamilton's mailbox. *Id.* at ¶5. Counsel agreed to this approach.

24.     On December 2, 2005, Mr. Hall located and retrieved the backup tape for the post-office which includes Pennell Hamilton's GroupWise files for October 2002. *Id.* at ¶6. This process involved searching through approximately 50 bins of 25 tapes each to locate the appropriately labeled tapes and took Mr. Hall approximately 2 hours. *Id.*

25.     On December 2, 2005, Mr. Hall merged the tape into the backup database. Hall Certification at ¶7. This process involved loading the tapes into the tape library and merging them into the backup database so the contents of the tapes could be determined. *Id.* This process took Mr. Hall approximately 4 hours. *Id.*

26.     On December 2, 2005, Mr. Hall searched for and began the restoration of the e-mail application and database files. *Id.* at ¶8. This process involved selecting the necessary files from the merged database and creating space on the server for them to be placed and starting the restore procedure. Id. This restoration took approximately 8 hours. *Id.*

27.     On December 5, 2005, Mr. Hall tested and published the data for remote user access. Hall Certification at ¶9. This process involved changing the pointers for the email

database, rebuilding the email database, stripping out the passwords and testing the remote access to it. *Id.* This process took Mr. Hall approximately 2 hours. *Id.*

28.     On December 5, 2005, Mr. Hall informed counsel that the post office that includes Pennell Hamilton's e-mails for October 2002 had been restored and tested. *Id.* at ¶10.

29.     Later on December 5, 2005, Mr. Hamilton's October 2002 e-mails were accessed by counsel remotely, and these emails were searched. It was determined that the October 22, 2002 document was saved on the restored backup tape, and that this document is a meeting notice which does not include any attachments. An identical version of this meeting notice was sent to all of the people listed as recipients. It was also determined on December 5, 2002, that the actuarial summaries included as part of "Integrity 105" were attached to an October 17, 2002 e-mail from Tom Messer to Pennell Hamilton and others. *See* PHS 8136072-75.

30.     Since, pursuant to the Court's instruction at the November 22, 2005 hearing, Defendants had undertaken the above-referenced burden to restore Mr. Hamilton's October 2002 emails, and those emails were now in searchable form, Defendants undertook the additional burden to review the October 2002 Pennell Hamilton e-mails. Counsel for Health Net searched the remaining Pennell Hamilton emails and located additional responsive documents on December 5, 2005. These additional documents were produced on December 9, 2005 at bates numbers PHS 8136070 to PHS 8136091 and include the documents bates-numbered PHS 8136080-83 (labeled as "Plaintiffs' Integrity 168") which are the subject of the Court's December 21, 2005 order.

31.     On December 9, 2005, counsel (Mr. DelBello) explained to counsel for Plaintiffs on the phone, and again in the production letter, how the Pennell Hamilton documents were located. A copy of the December 9, 2005 letter is attached as Exhibit D. In the December 9,

2005 letter, counsel also informed Plaintiffs that this investigation confirms that Plaintiffs' presentation at the Rule 37 hearings of "Integrity 105" was incorrect, misleading and improper. *Id.*

Dated: December 29, 2005

James E. DelBello

**A**

<u>McCoy v. Health Net, Inc. et al.</u>
Civil Action No. 03-CV-1801 (FSH) (PS)

<u>Wachtel v. Guardian Life Insurance Co. et al.</u>
Civil Action No. 01-CV-4183 (FSH) (PS)

# LEGEND TO DEFENDANTS' RESPONSE TO
# THE DECEMBER 21, 2005 ORDER

| Custodian/database | Bates starting number | Bates ending number |
|---|---|---|
| S. Gilmore electronic database | HNPRIV00000001 | HNPRIV00017619 |
| S. Gilmore paper documents | HNPRIV00017620 | HNPRIV00019169 |
| P. Dominianni electronic database | HNPRIV00019170 | HNPRIV00022670 |
| E. O'Donnell Non-Archived Database | HNPRIV00022671 | HNPRIV00027779 |
| E. O'Donnell Archived database | HNPRIV00027780 | HNPRIV00029078 |
| Assorted emails | HNPRIV00029079 | HNPRIV00029226 |
| H. Gonzalez electronic database | HNPRIV00029227 | HNPRIV00044506 |
| S. Waddick electronic database | HNPRIV00044507 | HNPRIV00085388 |
| S. Waddick Word documents | HNPRIV00085389 | HNPRIV00085728 |
| S. Waddick paper documents | HNPRIV00085729 | HNPRIV00086091 |
| V. Choma documents | HNPRIV00086092 | HNPRIV00086303 |

**B**

From:        Patricia Normington
To:          Davezac, Karen; Hamilton, Pennell; Mondon, Timothy; O'Donnell, Eileen; Patricia
Normington; Sibol, Dan; Singer, Joseph; Van Gieson, Bill
Date:        10/22/02
Time:        1:00PM - 2:00PM
Subject:     HIAA - follow up to Friday's meeting
Place:       Conf. Call  818-676-5050  in#0783


Patricia Normington
Executive Assistant
Health Net
p=(732) 643-7253
fax=732-643-7419


CC:          Bianchi, Maureen; Caparelli, Grace; Dinuzzo, John; Marguerite McAleenan; Messer,
Tom


EXHIBIT
Integrity
105
10-25-05 A7

PHS 7051144

# Health Net of the Northeast
## New Jersey Small Group
## Physician Out-of-Network Claims
## Estimated Liability

| Year | Number of Claims | Allowed Amount | Estimated Increase Due to HIAA %* | Estimated Increase Due to HIAA $ | Effect of Cost Sharing | Extra Costs to HN |
|------|-----------------|----------------|-----------------------------------|----------------------------------|------------------------|-------------------|
| 1999 | 41,681 | 9,967,300 | 3.5% | 344,782 | 70.0% | 241,333 |
| 2000 | 41,985 | 12,112,779 | 3.2% | 388,468 | 70.0% | 269,842 |
| 2001 | 52,478 | 14,331,844 | 6.2% | 886,331 | 70.0% | 620,432 |
| 2002 H1 | 31,592 | 8,833,813 | 12.0% | 1,061,921 | 70.0% | 743,135 |
| Total | 167,736 | 45,245,737 | 5.9% | 2,678,202 | 70.0% | 1,874,742 |

*2002 is an actuarial judgement.

PHS 7051145

# Health Net of the Northeast
## New Jersey Small Group
### Physician Out-of-Network Claims

| Year Month | Number of Claims | Allowed Amount | Net Amount |
|---|---|---|---|
| 199901 | 3,516 | 703,321 | 348,357 |
| 199902 | 3,687 | 768,451 | 440,666 |
| 199903 | 4,252 | 953,110 | 583,085 |
| 199904 | 3,691 | 796,873 | 509,834 |
| 199905 | 3,551 | 906,213 | 629,868 |
| 199906 | 3,552 | 893,166 | 589,995 |
| 199907 | 3,392 | 949,022 | 668,107 |
| 199908 | 3,450 | 897,868 | 630,879 |
| 199909 | 3,213 | 846,922 | 604,312 |
| 199910 | 3,322 | 788,964 | 532,807 |
| 199911 | 3,061 | 747,887 | 512,059 |
| 199912 | 2,874 | 734,703 | 514,828 |
| **1999 Total** | **41,581** | **9,967,300** | **6,564,984** |
| | | | |
| 200001 | 3,273 | 944,374 | 545,928 |
| 200002 | 2,954 | 852,271 | 540,678 |
| 200003 | 3,896 | 1,009,463 | 621,358 |
| 200004 | 3,433 | 969,803 | 676,094 |
| 200005 | 3,696 | 1,129,680 | 788,013 |
| 200006 | 3,676 | 1,036,896 | 727,145 |
| 200007 | 3,136 | 1,007,047 | 715,394 |
| 200008 | 3,455 | 1,008,284 | 727,277 |
| 200009 | 3,417 | 1,036,501 | 752,677 |
| 200010 | 3,624 | 962,414 | 672,388 |
| 200011 | 3,798 | 1,203,213 | 894,580 |
| 200012 | 3,427 | 933,883 | 660,677 |
| **2000 Total** | **41,985** | **12,112,779** | **8,322,275** |
| | | | |
| 200101 | 4,237 | 1,317,280 | 736,224 |
| 200102 | 3,808 | 1,156,603 | 719,409 |
| 200103 | 3,995 | 1,171,761 | 746,976 |
| 200104 | 4,040 | 1,102,122 | 715,292 |
| 200105 | 4,312 | 1,278,929 | 849,269 |
| 200106 | 4,251 | 1,284,974 | 853,091 |
| 200107 | 4,247 | 1,056,152 | 669,645 |
| 200108 | 4,572 | 1,249,546 | 814,518 |
| 200109 | 3,962 | 915,138 | 591,308 |
| 200110 | 5,221 | 1,377,907 | 935,011 |
| 200111 | 5,093 | 1,292,218 | 854,087 |
| 200112 | 4,620 | 1,149,314 | 760,089 |
| **2001 Total** | **52,478** | **14,331,844** | **9,244,898** |
| | | | |
| 200201 | 5,785 | 1,426,892 | 636,949 |
| 200202 | 5,318 | 1,378,448 | 768,407 |
| 200203 | 5,488 | 1,506,526 | 891,173 |
| 200204 | 5,558 | 1,600,529 | 977,804 |
| 200205 | 5,062 | 1,584,283 | 1,005,069 |
| 200206 | 4,481 | 1,335,336 | 847,454 |
| **2002 H1** | **31,692** | **8,833,813** | **5,126,857** |

PHS 7051146

## Health Net of the Northeast
## New Jersey Small Group
## Physician Out-of-Network Claims
## Sample Claims Repricing

| Year | HIAA Status | | | | |
|------|------|------|------|------|------|
| 1999 | HIAA Did not Change | 279,519 | 29.2% | 290,268 | 10,748 | 3.8% |
| 1999 | HIAA Increase | 677,865 | 70.8% | 700,232 | 22,367 | 3.3% |
| 1999 Sample Total | | 957,385 | | | 33,115 | 3.5% |
| 2000 | HIAA Decrease | 90,565 | 7.1% | 79,775 | | |
| 2000 | HIAA Did not Change | 347,408 | 27.2% | 353,766 | 6,358 | 1.8% |
| 2000 | HIAA Increase | 839,335 | 65.7% | 873,627 | 34,292 | 4.1% |
| 2000 Sample Total | | 1,277,308 | | | 40,650 | 3.2% |
| 2001 | HIAA Decrease | 311,180 | 14.5% | 309,477 | | |
| 2001 | HIAA Did not Change | 254,252 | 11.8% | 259,747 | 5,494 | 2.2% |
| 2001 | HIAA Increase | 1,581,267 | 73.7% | 1,708,533 | 127,265 | 8.0% |
| 2001 Sample Total | | 2,146,699 | | | 132,760 | 6.2% |

C

| | |
|---|---|
| RENEE McCOY, individually and on behalf of all others similarly situated,<br>                    Plaintiffs,<br>v.<br><br>HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC. and HEALTH NET OF NEW JERSEY, INC.,<br>                    Defendants. | Civil Action No. 03-cv-1801 (FSH)(PS) |
| ZEV and LINDA WACHTEL, individually and on behalf of their minor son, TORY WACHTEL, and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>GUARDIAN LIFE INSURANCE CO. OF AMERICA, HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC. and HEALTH NET OF NEW JERSEY, INC.,<br><br>                    Defendants. | Civil Action No. 01-cv-4183(FSH)(PS) |

## CERTIFICATION OF DONALD HALL

This Certification is provided in response to the Court's Order dated December 21, 2005 ("the December 21 Order" or "the Order").

1.     I am an employee of Health Net, Inc. and a member of the Server Management Services for the Northeast. My job responsibilities include daily network operations, system maintenance, troubleshooting, backup and restore of data.

2.     On December 1, 2005, I was contacted by James E. DelBello, Esq., an attorney with Morgan, Lewis & Bockius LLP, regarding the electronic history of a document dated October 22, 2002. Mr. DelBello sent me a copy of the October 22, 2002 document on December 1, 2005, a copy of which is attached as Exhibit A.

3.      Later on December 1, 2005, I reviewed the document and informed Mr. DelBello that this document was created on and sent from the Health Net of the Northeast, Inc. GroupWise system on the date shown. During the conversion process as discussed below, emails within the user's GroupWise mailbox were copied and converted from a GroupWise format to a Lotus Notes format using a customized process performed primarily by a third party specialist consultant as internal Health Net ITG resources did not have the technical expertise to perform this function. This conversion was a highly technical and difficult process.

4.      Health Net of the Northeast, Inc. ("HN-NE") operated on a GroupWise e-mail system from June of 1999 until June to October 2003, at which time the majority of HN-NE users were converted to the Lotus Notes e-mail system. When this conversion occurred, the e-mails that existed on the GroupWise System were transferred to the Lotus Notes system primarily by the third party specialist consultant. The GroupWise system at HN-NE was backed up incrementally every day with a complete, formal backup occurring every 30 days, on or around the last day of the month. The incremental daily backup tapes were reused and recycled. In addition, when the GroupWise system was put in place, a 90-day retention policy for all e-mails in a user's account was put in place to help with disk space issues. These retention and back-up policies continued until the company moved to the Lotus Notes Platform. Therefore, if an e-mail was deleted either by the user or through the retention policy after the system is backed up monthly, and that user had not archived the email, that e-mail may not be available to the user in his or her current mailbox, but may be available from the formal monthly backup tape.

5.      On December 1, 2005, Mr. DelBello asked me to find and restore the back up database in an attempt to locate the October 22, 2002 document and determine whether it had any attachments. I explained to Mr. DelBello that the e-mail would be identical for all recipients

regardless of which post office they were in and suggested checking Pennell Hamilton's mailbox. Mr. DelBello agreed to this approach.

6.    On December 1, 2005, I located and retrieved the backup tape for the post-office which includes Pennell Hamilton's GroupWise files for October 2002. This process involved searching through approximately 50 bins of 25 tapes each to locate the appropriately labeled tapes and took approximately 2 hours.

7.    On December 2, 2005, I merged the tape into the backup database. This process involved loading the tapes into the tape library and merging them into the backup database so the contents of the tapes could be determined. This took approximately 4 hours.

8.    On December 2, 2005, I searched for and began the restore of the e-mail application and database files. This process involved selecting the necessary files from the merged database and creating space on the server for them to be placed and starting the restore procedure. This restoration took approximately 8 hours.

9.    On December 5, 2005, I tested and published the data for remote user access. This process involved changing the pointers for the email database, rebuilding the email database, stripping out the passwords and testing the remote access to it. This took approximately 2 hours.

10.    On December 5, 2005, I informed Mr. DelBello that the post office that includes Pennell Hamilton's e-mails for October 2002 had been restored and tested.

11.    At this time, Mr. Hamilton's October 2002 e-mails were available for review by Morgan Lewis through the Health Net (secure remote access) Citrix system.

12.    I personally spent a total of approximately 8 hours, out of the total of 16 hours required for this process, working on this project, during which time I was unable to perform my

3

other job responsibilities. The difference between the hours listed for the duration of each task and my dedicated time are accounted for by necessary, but unattended procedures.

Dated: _28 December 2005_

_____
Donald Hall

**From:**     Patricia Normington
**To:**        Davezac, Karen; Hamilton, Pennell; Mondon, Timothy; O'Donnell, Eileen; Patricia
Normington; Sibol, Dan; Singer, Joseph; Van Gieson, Bill
**Date:**      10/22/02
**Time:**      1:00PM - 2:00PM
**Subject:**   HIAA - follow up to Friday's meeting
**Place:**     Conf. Call:  818-676-5050  ID#0783


Patricia Normington
Executive Assistant
Health Net
p=(732) 643-7253
fax=732-643-7419


**CC:**        Bianchi, Maureen; Caparelli, Grace; Dinuzzo, John; Marguerite McAleenan; Messer,
Tom

PHS 7051144

D

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com



**Morgan Lewis**
COUNSELORS AT LAW

**James E. DelBello**
215.963.5182
jdelbello@morganlewis.com

December 9, 2005

**VIA FEDERAL EXPRESS**

Barbara G. Quackenbos, Esquire
Sills Cummis Epstein & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102

Re:  <u>McCoy v. Health Net, Inc., et al.</u>
     Civil Docket No. 03-1801 (FSH) (PS)

     <u>Wachtel v. Guardian Life Insurance Co., et al.</u>
     Civil Action No. 01-CV-4183 (FSH) (PS)

Dear Barbara:

I am writing to follow up on my letter to you of December 2, 2005. At bates-numbers PHS 8135975 to 8136069 and PHS 8136092 to 8136121, we are producing additional documents from Eileen O'Donnell's e-mail box that were discussed in my earlier letter. In response to your December 1, 2005 e-mail, we also contacted Mr. Morris and Mr. Wallace again to determine if they have additional documents. Mr. Morris located additional documents which are attached at bates-numbers PHS 8135860 to 8135914. Please note that the email bates-stamped PHS 8135865 transmits the spreadsheet titled DobiHiaa, which was previously produced at bates numbers PHS 7062072 to 7062161. The email bates stamped PHS 8135864 transmits the spreadsheet titled HiaaPart1, which was previously produced at PHS 7051157. The email bates-stamped 8135863 transmits the spreadsheet titled HiaaPart2, which was also produced on the disk bates-numbered PHS 7051157. Mr. Wallace also located additional documents which will be produced by Rick Davis either today, or on Monday.

At bates numbers PHS 8136070 to 8136091, we are producing additional documents that were located in Pennell Hamilton's October 2002 e-mails. These documents were located through our efforts to respond to the Court's order of November 22, 2005, that we trace back to its source the October 22, 2002 document (bates numbered PHS 7051144) which was sent by Patricia



Normington to Pennell Hamilton, and others. To answer the Court's question, we located, scanned, restored, and removed the passwords from the backup database for the "post-office" which includes Mr. Hamilton's Groupwise files for October 2002. This process is time-consuming and burdensome. We then searched Mr. Hamilton's file and located the documents that we are producing. We also determined that the October 22, 2002 document is a meeting notice which does not include any attachments. An identical version of this notice was sent to all of the people listed as recipients.

This investigation confirms that Plaintiffs' presentation at the Rule 37 hearings of "Integrity 105" was incorrect, misleading and improper. At the Rule 37 hearings, Plaintiffs treated the October 22, 2002 notice (PHS 7051144), and actuarial summaries that were produced at PHS 7051145 to PHS 7051147, as one document. These documents were obtained from Dan Sibol's HIAA paper file and produced on September 12, 2005. At the November 16 and 22, 2005 hearings, Plaintiffs marked and presented these documents as a single e-mail with attachments and called it "Plaintiffs' Integrity 105." In addition, Plaintiffs made two-sided copies of the actuarial documents behind the meeting notice in an effort to confuse witnesses and distort the record. Defendants did not produce these documents copied on two sides, and Plaintiffs presentation of these documents in this way was purposefully misleading.

We are also close to completing the review of the e-mails and attachments for Nancy Bushnell, Lisa Dietz, Franklin Tom and Nancy Starts and hope to produce those documents next week. We are also continuing to work on the privilege logs for these productions that we will provide as soon as they are completed.

Per your request, we are producing these documents in paper form. The spreadsheets, however, are being produced on disks, because they are kept that way in the ordinary course of business. Thank you for your attention to these matters. If you have any questions, please let me know.

Very truly yours,

James E. DelBello

Attachment

cc: Jay H. Calvert, Jr., Esq
    Robert A. White, Esq.
    Hervé Gouraige, Esq.
    Barry M. Kazan, Esq.
    Richard J. Davis, Esq.



**Morgan Lewis**
COUNSELORS AT LAW

William Greenberg, Esq.
Heather V. Taylor, Esq.
*Counsel for Defendants*

Barry M. Epstein, Esq.
Stuart M. Feinblatt, Esq.
D. Brian Hufford, Esq.
Robert J. Axelrod, Esq.
Jonathan L. Alpert, Esq.
David W. Stanley, Esq.
*Counsel for Plaintiffs*