UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENEE McCOY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    -against-<br><br>HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC. and HEALTH NET OF NEW NEW JERSEY, INC.,<br>        Defendants. | Docket No.03-CV-1801 (FSH) (PS) |
| ZEV and LINDA WACHTEL, individually and on behalf of their minor children, TORY, BRETT AND JESSE WACHTEL and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    -against-<br><br>HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC. and HEALTH NET OF NEW JERSEY, INC.,<br>        Defendants. | Docket No. 01-CV-4183 (FSH) (PS) |

**PLAINTIFFS' MEMORANDUM OF LAW ON HEALTH NET'S JUSTIFICATION FOR ITS DISCOVERY ABUSE CONSISTING OF CONCEALMENT OF DOCUMENTS**

SILLS CUMMIS EPSTEIN &
 GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102-5400
973-643-7000

POMERANTZ HAUDEK BLOCK
 GROSSMAN & GROSS, LLP
100 Park Avenue
New York, New York 10017-5516
212-661-1100

Counsel for Plaintiffs
(Other counsel listed on signature block)

## OVERVIEW OF ARGUMENT

Plaintiffs submit this Memorandum in response to the Court's request for an analysis of propriety of Health Net's discovery practice from January 2002 until January 2005 as articulated by its lead outside counsel. As shown below, Health Net failed to perform its obligations to provide responsive documents, to supplement incomplete or false answers, and to forthrightly apprise Plaintiffs and the Court that rafts of responsive documents existed but were not being produced. As has become glaringly obvious throughout the course of the eight-day plus Integrity/Rule 37 hearing, Health Net reneged on its discovery obligations in ways that compromised the administration of justice and violated numerous Court orders.

As described to this Court on December 20, 2005, Health Net's practice in responding to Plaintiffs' discovery was to make general objections of burden, vagueness and relevance, while producing a few documents "notwithstanding" the objections. When Plaintiffs disputed the sufficiency of the production and the specific responses, Health Net represented there were no other responsive documents. Plaintiffs moved for judicial relief, and explained the need for Health Net to clarify what documents were being withheld due to objection. The Court would invariably order full production of responsive documents - - to no avail, since unbeknownst to the Court, Health Net was in fact concealing responsive documents from its own outside counsel.

Many responsive documents were created <u>subsequent</u> to Plaintiffs' initial discovery demands in January of 2002 and were not covered by any objection. The eight days of hearings engaged in by this Court since mid-October 2005 have shown an unprecedented and sweeping disregard for the rules of litigation conduct combined with an assault on the integrity of the judicial process. Here, documents responsive to these initial discovery requests were created by Health Net (for example in October 2002 relating to the NJDOBI Consent Order and First Restitution) to implement a continuing fraud on this Court. Health Net found itself in the

anomalous position of having to supplement discovery responses and produce documents designed to implement the fraud on its beneficiaries, on its own counsel, various regulators and the Court. This explains why it took the Integrity Motion to pry them loose three years later. Health Net's actions are unprecedented.

Plaintiffs have not found a case which involved the egregious and deliberate upending of the federal discovery rules uncovered in this case. Nevertheless, various cases involving less egregious facts, including *Koch v. Shore Slurry Seal,* 2003 U.S. Dist. LEXIS 26463 (D.N.J. 2003) reflect the impropriety of Health Net's discovery conduct in this case, and support the imposition of the most severe sanctions, including but not limited to, a default judgment and appointment of an outside monitor.

**The Facts Underlying Health Net's Discovery Misconduct**

Health Net's main outside counsel (John Pendleton of McCarter & English) opined that an objection to discovery relieved Health Net of any further obligation to produce documents unless Plaintiffs disputed the objection, met and conferred with Health Net, and sought judicial intervention. 12/20/05 Tr. 58:16-25; 64:23-65:5. He contended that since Plaintiffs had not done so, Health Net was exonerated of providing additional discovery. *Id.* at 70:20-71:1 ("But what I did was I said this is an overbroad request, it's objectionable for a number of reasons, we're going to give you this and if you want something more than that, tell me. *And you didn't*") (emphasis supplied).

In fact, Plaintiffs followed every single one of the steps Mr. Pendleton contends they should have done. Plaintiffs disputed the objections and met and conferred with Health Net over whether relevant documents were being withheld due to the objections. Pls. Integ. Exhs. 210 and 211. Although Health Net told Mr. Pendleton who then assured Plaintiffs that no responsive documents were being withheld, Plaintiffs nonetheless sought judicial intervention by letters

2

dated April 15, 2002, May 16, 2002 and May 21, 2002. Plaintiffs in fact asked the Court to require Health Net to detail the documents it was withholding based on asserted objections, if any. *See* Plaintiffs' May 16, 2002 letter to Magistrate Judge Chesler ("Without these safeguards in place, Plaintiffs will have no objective measure or any assurance that Defendants are producing documents and are not tacitly relying on a purported lack of relevance or other non-privileged objections to withhold same").

Plaintiffs did everything they could to challenge what they understood to be a limited and inadequate production. There is no substance to Mr. Pendleton's assertion that "discovery wasn't pursued aggressively by the plaintiffs in 2002." 12/20/05 Tr. 65:21-22. It was Health Net which prevented the pursuit of discovery by Plaintiffs. Health Net moved to dismiss based on mootness, and moved for a stay of discovery pending disposition of that motion, which was granted by the Court. (Plaintiffs pointed out that even before the Court's stay of discovery, Health Net had given itself a stay by simply not producing relevant documents. 6/10/02 Tr. 28.) In any event, once Health Net's motion was denied by this Court on October 9, 2002, Health Net was again required to respond to discovery and supplement its prior responses and prior production, which it failed to do. Up until April 16, 2003, Health Net had produced a mere 309 pages of discovery in *Wachtel,* and most of it was the Wachtels' EOC, which Plaintiffs had in fact produced first to Health Net.

Health Net's outside counsel contended that Health Net's theory of Plaintiffs' complaint resulted in a narrower construction of relevance than reference to the actual words of the discovery requests. 12/20/05 Tr. 61:21-62:11. Plaintiffs have found no support to justify a defendant substituting its theory of the case (or its crimped understanding of Plaintiffs' theory of the case) to justify a narrow view of relevance, particularly without any disclosure to the adversary. Further, even under Health Net's limited view that Plaintiffs were challenging the

3

validity of the Ingenix databases, Health Net cannot credibly argue that documents reflecting its reliance on such databases (and particularly outdated versions) were not relevant. Plaintiffs made this clear, including in their May 21, 2002 letter to the Court: "PHS has produced only a handful of documents that shed any light whatsoever on Plaintiffs' central claims, *such as how PHS uses the PHCS data")* (emphasis added).

Health Net's outside counsel sought to excuse Health Net's discovery transgressions by asserting that once Plaintiffs issued a second set of discovery requests in *Wachtel,* in February of 2003, its first set from January 2002 were superseded such that Health Net no longer had any obligation to respond to the first set. 12/20/05 Tr. 66:4-9. This contention is baseless, and is contrary to the clear duty in Rule 26(e) (2) to supplement later-produced or subsequently-located responsive material, regardless of whether there are additional requests. Even if Health Net thought the prior requests were superseded, each and every discovery request in *Wachtel* and *McCoy* should have elicited the withheld documents. Further, the Court made it very clear to Health Net that its discovery obligations were continuing, and that supplementation was required on an ongoing basis. *See, e.g.,* Orders dated November 5 and November 18, 2003.

All of Mr. Pendleton's attempts to justify Health Net's discovery misconduct fall short and are *post hoc.* None of his explanations can gloss over the simple and compelling fact that he, as the source of information from Health Net to the Court and to Plaintiffs, did not know that these critical documents existed during 2002, 2003, 2004 and the first half of 2005: "I did not have the January 15th e-mail or any information about [Outdated Data] when we responded to these document requests and interrogatory answers in 2002." 12/20/05 Tr. 65:6-8. He admitted that he only saw Pls. Integ 18 (as an example of the similar documents produced only in the fall of 2005) in the last "few months" in 2005. *Id.* 46:1-4. It was *not* the case that he was withholding them, because he did not know they even existed: "Well, I didn't have any

4

documents in my possession that I was withholding, let's make that perfectly clear." *Id.* 70:19-20.

Health Net did not in fact withhold these critical, responsive documents because of its objections, its theory of Plaintiffs' case, superseding discovery requests or any reason other than one overarching reason: to prevent full disclosure of Health Net, Inc's control and involvement in claims payment and the fundamental interactions of its subsidiaries with beneficiaries and regulators on a wide-ranging set of issues relating to out-of-network reimbursement, including to cover up its undisclosed use of Outdated Data for many years and its untruthful negotiation with insurance departments (including NJDOBI, NYDOI, NYDOH, the DMHC, the California DOI, Ct DOI) and its untruthful representations and testimony to this Court since the inception of the case. Regrettably, its cover up continues to date.[1] *See* 12/28/05 Judge Shwartz Order (finding that its withholding of critical documents was willful).

---

[1] James Del Bello's December 28, 2005 Certification continues Health Net's obfuscation, and fails to acknowledge the incalculable harm caused by Health Net's withholding of critical documents. Instead of an honest admission that these critical documents, such as Pls. Integ. ##177 and 168, were found only because the Court, responding to Plaintiffs' showing in the Integrity/Rule 37 motion, demanded an explanation, Mr. Calvert at the 12/19/05 hearing (and parroted by Mr. DelBello in his Certification) sought to distract the Court with a baseless attack on Plaintiffs' alleged "manufacturing" of Pls. Integ 105 when in fact Plaintiffs understandably thought that actuarial documents dated 10/21/02 may have been attached to an email dated 10/22/02. (It is Health Net's "defrauder" logic that permits Mr. Calvert and Mr. DelBello to attempt to blame Plaintiffs when it was Health Net that failed to produce the devastating email that was in fact used to communicate the actuarial documents.) The actuarial documents in Pls. Integ 105 appeared in consecutive bates range following the 10/21/02 Patricia Normingtnon email in Dan Sibol's late-discovered HIAA file. Mr. DelBello's Certification claims that the actuarial documents in Pls. Integ 105, which are dated 10/21/02, were attached to Tom Messer's email dated four days earlier, 10/17/02 (Pls. Integ 177). This is impossible. Rather, it is obvious that the actuarial documents were in fact sent to the HIAA group on numerous dates in October 2002, making their concealment until December 12, 2005 more culpable. As the Court pointed out during the December 12, 2005 hearing, Tom Messer's critical document explaining the impact of Outdated Data back to 1999 should have been revealed from six potential searches, e.g., the emails of each of the HIAA Group recipients. The irony is that Health Net has still not produced the email that attached the October 21, 2002 actuarial documents. Health Net has never explained why the actuarial documents - - unattached to any email and literally located in the midst of many thousands of pages unrelated to NJDOBI - - were first produced in January of 2005. The Court has referred to the defense counsel technique of producing critical documents in a blizzard of other documents so that the few critical pages are difficult to find and assess. This was Health Net's technique in January of 2005 with the actuarial documents, divorced from any emails, which were not produced until the fall of 2005. As noted, the critical 10/17/05 Messer email was not produced until December 12, 2005.

5

The Court's Integrity/Rule 37 hearing has made clear that for the last three years, both Plaintiffs and the Court have been tilting at windmills created and sustained by Health Net's fraud on the Court.

## POINT I

### OBJECTIONS TO DISCOVERY DID NOT EXCUSE HEALTH NET FROM PRODUCING RELEVANT DOCUMENTS IN THIS CASE

The *Koch* case was brought by a manufacturer of asphalt and road-paving materials against a construction company which had sold the plaintiff exclusive rights to the particular asphalt mix and contracted to purchase a certain amount of asphalt over time. Instead, the plaintiff alleged that defendant had sold the company to a successor, which then manufactured the same asphalt in violation of the defendant's agreement with plaintiff. In discovery, plaintiff attempted to obtain documents relating to the successor company and to ascertain whether the successor was in fact operating a competitor plant as prohibited by the agreement.

The Court in *Koch* was forced to hold numerous court conferences, review dozens of motions and hundreds of pre-motion letters, and spend countless hours as discovery assumed "epic proportions." Only when the district court held a Rule 37 hearing did the "futility" of the Court's "enormous investment of time and effort" become clear in the face of the discovery "brinkmanship" by the defendant, which had failed to produce relevant documents covering the topics requested by plaintiff for at least two years.

Specifically, the plaintiff in *Koch* sought certain data in discovery requests, which defendants objected to as burdensome and irrelevant. Notwithstanding the objection, defendants stated there were no responsive documents. A year later, the defendants produced some (but not all) responsive documents. The *Koch* court had believed counsel's representations that defendant had no additional responsive documents, noting counsel was an officer of the court

6

and a professional. Two years later, the Court was "shocked" to discover that there were in fact additional documents that (1) existed; (2) were relevant; (3) were requested by Plaintiff and (4) defendant failed to produce previously. The *Koch* court noted that its order precluding defendants affirmative use of withheld documents did not absolve it from its obligation to produce such discovery to its adversary. The Court found that the defendant mischaracterized and unreasonably narrowed plaintiff's discovery requests. The *Koch* court noted that in the face of such machinations, the plaintiff:

> "is much like a mouse searching for the cheese at the end of a maze in which the walls and the chasse shift continuously. Such a maze is undoubtedly frustrating for the mouse."

*Koch* at *53. The court further found that this type of discovery misconduct resulted in a complete breakdown of the adversarial system:

> "Each side must be given access to all the original, relevant data. Each side then selects from that presumptively complete set of information that data which supports its position or refutes the other's position. When one side fails to participate in production of relevant data, the pool of information is incomplete. What results is the adverse party's attorneys cannot perform their duty to their clients. It is at this point that the adversarial process breaks down and justice, as the American system has conceived it, cannot be served."

*Id.*

There are many parallels between Health Net and the defense discovery shenanigans in *Koch*, including the misuse of objections to conceal relevant documents *sub silentio*. One critical distinction, however, is that in *Koch*, the defendant was innocent of its counsel's violation of rules and court orders, such that it was counsel, not the party, who was responsible for the serious defalcations. In this case, Health Net orchestrated the litigation strategy, including the fraud on the Court. Documents and testimony compelled by the Integrity/Rule 37 Motion demonstrate that at all relevant times Health Net determined the scope of responsive documents to be produced and kept its own counsel in the dark to consummate its fraud. The presence of in-

house counsel imputes awareness by the party of how its litigation is proceeding. *Adams v. Trustees of New Jersey Brewery Trust Fund*, 29 F.3d 863 (3d Cir. 1994). The actual testimony (and documents) of Health Net employees, including Eileen O'Donnell, Paul Dominianni, Scott Gilmore, Pennell Hamilton, Karen Davezac, Dan Sibol, Barry Averill, Jay Gellert, Joe Singer, Kate Longworth-Gentry, Liz Guerin, Rae Joyce, Marguerite McAleenan, Timothy Mondon, Katy Zalinksy, Bill Carr, Barry Averill, Claire Wheaton, Joanne Broome, Robert Morris, Robert McCartt, and many others, reinforces the exclusion of the outside counsel. It has become clear that Health Net called the shots, and those shots included a willingness to defraud the Court and deprive both the Court and Plaintiffs of essential documents needed for a just adjudication of class claims and preliminary relief. The blameworthy culprit is Health Net. The proof is that discovery concealment continued well after McCarter & English were no longer involved in discovery. Regardless of the identity of outside counsel, Health Net managed to conceal these critical documents.

Health Net constantly represented to the Court (including at the September 25, 2003 conference) that specific documents (such as instructions to the programmers) were not written, when in fact they existed and turned up later, when their usefulness had passed or after the Integrity motion compelled them. Court orders beginning in June 2003 that specifically called for the production of all responsive documents were ignored repeatedly. This Court has sought answers as to how and why responsive documents were withheld until very recently. Not a single Health Net witness (or counsel) has been able to explain why these critical documents were not produced beginning in 2003. As shown in Point III below, this is precisely the conduct that should result in a default judgment. Health Net's discovery responses over time were so evasive that they amount to a total failure to disclose, answer or respond under Rule 37(a). *HH v. DM*, 2005 U.S. Dist LEXIS 30342 (E.D.Pa. 2005).

## POINT II

## HEALTH NET VIOLATED ITS DUTY TO SUPPLEMENT ITS DISCOVERY RESPONSES UNDER RULE 26(e)(2)

Health Net also clearly violated its obligation to supplement its discovery responses, and provide documents when they came into existence or were located. *Gilbert v. Prudential-Bache,* 1985 U.S. Dist. LEXIS 23290 (E.D.Pa. 1985). *See also Moore's Federal Practice* sec. 33.106 (party has duty "seasonably to amend" prior answers) and 26.132 ("A party must supplement or correct discovery disclosures and responses on learning that the disclosures or responses are incomplete or incorrect"). Where a defendant asserts that responsive documents do not exist, its discovery obligations are not over:

> "The obligation to provide discovery is a continuing one. The defendants must either supply the information/documents sought, assert that it does not exist, or specify the nature and extent of their unsuccessful investigation."

*Id.* *2. The court in *Gilbert* commented on the "unmistakable odor of obstructionism and recalcitrance" – the same odor that caused the Integrity Motion to be filed and has been confirmed by the November – December 2005 document production and the eight days of hearings held by this Court.

If a party fails to supplement or amend as required, such party is subject to sanctions under Fed. R.Civ. P. 37(c)(1) unless the failure was harmless. *Williams v. Morton,* 343 F.3d 212 (3d Cir. 2003). A party that has been made aware of its discovery deficiencies by the court cannot respond with inaction or indifference. *DiGregorio v. First Rediscount Corp.,* 506 F.2d 781 (3d Cir. 1974). When a Court is regrettably faced with recidivism, such as by Health Net, the Court is obligated to consider its past conduct in fashioning remedies for continued sanctionable conduct. To ignore it would be "blinking at reality in not taking [Health Net's] proven propensities into account." *Thibeault v. Swaure D Co.,* 960 F.2d 239, 246 (1st Cir. 1992);

9

*Adriana Int'l Corp. v. Thorean,* 913 F.2d 1406, 1411 (9th Cir. 1990), *cert. denied,* 498 U.S. 1109 (1991).

As shown in prior briefing by Plaintiffs and in Point III below, a default against Health Net is the only fair remedy for Health Net's years of actions far more egregious than only "obstructionism and recalcitrance."

### POINT III

### TESTIMONY THUS FAR SUPPORTS IMPOSITION OF A DEFAULT AS A NECESSARY DETERRENT TO MISCONDUCT

The point of Rule 37 sanctions is to penalize a party for its misconduct and to deter others from the same course. *Roadway v. Piper,* 447 U.S. 752 (1980); *NHL v. Metropolitan Hockey,* 427 U.S. 639, 640-41 (1976). Where, as here, Rule 37 violations are compounded by fraud on the court and perjurious certifications and testimony, integrity violations compound the misconduct compelling the harshest possible sanction.

In *Adams,* the Third Circuit held that willfulness can be attributed to "self-serving behavior." 29 F.3d at 868. The Third Circuit further held, applying the *Poulis* factors for evaluating the appropriate sanction, that prejudice may be caused by dimming memories, loss of evidence or the deprivation of information through non-cooperation with discovery. In *Roman v. City of Redding,* 2005 U.S. App. LEXIS 2358 (3d Cir. 2005), the Third Circuit upheld dismissal of claims and found that willfulness may be established by the absence of reasonable excuses as well as the failure to meet court-imposed deadlines. The court noted that the prejudice that results from incomplete discovery is an inability to prepare a full and complete trial strategy, which cannot be remedied by permitting more discovery, particularly where there have already been substantial delays. Such is the case here.

In *Stewart v. Aitken Products,* 607 F.Supp. 883 (E.D.Pa.), *aff'd,* 779 F.2d 42 (3d Cir. 1985), the court precluded affirmative use of a video tape helpful to a party who had concealed

10

it. The court precluded introduction of the videotape as the "epitome of trial by surprise that the modern rules of discovery were intended to eliminate."

In its November 10, 2005 letter to Judge Shwartz and in representations to this Court Health Net described the documents it concealed as helpful to it. Although we now know nothing could be further from the truth, it is apparent Health Net tried to fit its conduct into the *Stewart* fact pattern. It hoped not to produce responsive discovery – at the sole cost of not using it. The unanticipated glitch was that after precluding the evidence, this Court nevertheless ordered Health Net to produce it to Plaintiffs. As soon as Health Net was compelled to produce these concealed documents - - in late November and mid-December of 2005 - - the truth was clear: they were extremely harmful to Health Net and helpful to Plaintiffs. Health Net's representation to the contrary was false in fact. *See, e.g.,* Pls. Integ 166-177. Had these documents been produced timely, the course of litigation over the last three years would have been completely different. Health Net's fraud on the Court would have been prevented or at least truncated. In their absence, Plaintiffs and the Court misspent thousands of hours and valuable resources trying to obtain answers that are readily available on the face of the concealed documents about what Health Net knew when it knew it and what it did about it. Had this Court merely precluded Health Net's use of the evidence and not ordered its production, Plaintiffs would have been forever deprived of the most critical evidence in the case.

In addition to concealing the critical documents, Health Net responded evasively to interrogatories, providing misleading answers that feigned compliance with regulations by omitting salient details. In similar circumstances, the court rejected a party's attempt to conceal the existence of an employee helpful to the adverse party through the "simple illicit device of omitting his name" from discovery responses. *Langer v. Presbyterian Hosp.,* 1995 U.S.Dist. LEXIS 2199 (E.D.Pa. 1995). In interrogatory after interrogatory, over the course of several

11

years, Health Net omitted the names of knowledgeable employees who could have shed light on the challenged practices, and put Plaintiffs and the Court through a planned assault on their endurance in the hope that Plaintiffs would become exhausted and surrender their claims. As the *Langer* court noted, this case "of Dickensian duration, might well have ended years sooner, had the rules been obeyed." The pretrial could have been concluded years earlier had Health Net obeyed the rules. It is likely that the Plaintiff class would have obtained injunctive relief, and Health Net could not have maintained many of its legal positions had court orders not been continuously violated. The Ingenix database discovery would have been completed, allowing Plaintiffs to file a supplemental expert report far earlier than they did. (The full scope and extent of Health Net's misconduct – and the unfathomable waste of time to Plaintiffs and the Court its misconduct caused - were not fully apparent at the time Judge Shwartz issued her Order refusing to permit the supplemental expert report. Key documents that have only been produced within the last two months would have saved years of effort had Health Net's production been compliant with the discovery rules and Court orders.) The Dickensian violation in this case involved abusive discovery going to every aspect of the case from California to the East Coast.

The harm to Plaintiffs and the Court has been incalculable, requiring a default and appointment of a monitor. As noted by the Supreme Court thirty years ago:

> "If the sanction of dismissal is not warranted by the circumstances of this case, then the court can envisage no set of facts whereby that sanction should ever be applied."

427 U.S. at 640-41.

## CONCLUSION

Plaintiffs respectfully submit that the Court find that Health Net improperly concealed documents. It asserted baseless objections followed by representations that it had provided all responsive documents. It ignored Plaintiffs objections and kept its outside counsel in the dark to

12

effectuate its fraud on the Court. It violated its continuing duty to amend its prior discovery answers while ignoring discovery orders requiring complete and timely disclosure. As a result of its Integrity violations and discovery misconduct, Plaintiffs request a default judgment be entered against Health Net.

Dated: January 2, 2006
       Newark, New Jersey

                                    Respectfully Submitted,

**SILLS CUMMIS EPSTEIN & GROSS P.C.**
One Riverfront Plaza
Newark, NJ 07102
(973) 643-5899

_____
Barry M. Epstein (BE-6097)

_____
Barbara Gail Quackenbos (BQ-9448)

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS, LLP**
100 Park Avenue
New York, NY 10017-5516
(212) 661-1100

_____
D. Brian Hufford (DH-7181)

**Co-Lead Counsel for Plaintiffs**

13