**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ZEV AND LINDA WACHTEL, *et al.*, | ) ) | Civ. Docket No.  01-4183 |
| | ) | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiffs | ) ) | |
| v. | ) ) | |
| HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC., and HEALTH NET OF NEW JERSEY, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| RENEE MCCOY, individually and on behalf of all others similarly situated, | ) ) ) | Civ. Docket No.  03-1801 |
| | ) | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiffs | ) ) | **OPINION** |
| v. | ) ) | Date: June 19, 2007 |
| HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC., and HEALTH NET OF NEW JERSEY, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

**HOCHBERG, District Judge:**

**I.      Introduction:**

The Court's December 6, 2006 Opinion and Order awarded Plaintiffs reasonable attorneys' fees and expenses incurred in connection with: (1) the Rule 37/Integrity hearing and all briefing in connection therein and (2) each of Plaintiffs' motions brought to invoke discovery

1

compliance after an Order of the Magistrate Judge or the Court had previously so ordered. The Court has considered Plaintiffs' December 18, 2006 and January 9, 2007 Fee Applications; Plaintiffs' May 4, 2007 submission in response to this Court's April 27, 2007 Order; Plaintiffs' May 10, 2007 submission in response to this Court's May 8, 2007 Order; and Health Net's December 28, 2006 and January 18, 2007 response briefs pursuant to Fed. R. Civ. P. 78.

## II.     Factual and Procedural Background:

Plaintiff-beneficiaries have sued their healthcare insurance providers under ERISA, 29 U.S.C. §1001 *et seq.*, for breach of fiduciary duty and other wrongs connected to the way in which Health Net[1] reimburses out-of-network ("ONET") claims. Following Plaintiffs' Motion for a Rule 37/Integrity Hearing because of Defendants' discovery non-compliance and misrepresentations to the Court regarding the Second Restitution, the Court held eleven days of evidentiary hearings between October 2005 and March 2006 about, *inter alia*, whether Defendants were compliant with Court orders to retain, search, and produce e-mail and other electronic documents and candid in their representations to the Magistrate Judge and this Court about their restitution to beneficiaries. The Court concluded that although it was "extremely reluctant to sanction parties or counsel...Health Net's repeated and unabated discovery abuses and lack of candor leave this Court no other choice in order to protect the integrity of the judicial process, remedy the prejudice suffered by Plaintiffs, punish the wrongdoers, and accord a measure of relief to the other parties and counsel in this case. When the abuses are as extreme as they are in this case, to refrain from sanctions is unfair to the parties who conduct themselves according to the

---

[1] As used in this Opinion, "Health Net" or "Defendants" refers collectively to all of the Health Net entities, regardless of geographic location.

rules." *See* December 6, 2006 Opinion at 4. The Court ordered several sanctions against Defendants under Rule 37 and its inherent powers, including awarding Plaintiffs reasonable attorneys' fees and expenses to be paid by Health Net incurred in connection with: (1) the Rule 37/Integrity hearing and all briefing in connection therein and (2) each of Plaintiffs' motions brought to invoke discovery compliance after an Order of the Magistrate Judge or the Court had previously so ordered.[2] *See* December 6, 2006 Opinion at 36-61.

Plaintiffs' counsel Sills Cummis Epstein & Gross ("Sills Cummis") requests $4,133,589 in

---

[2] Health Net argues in its December 28, 2006 response brief that Plaintiffs should not receive attorneys' fees for the Rule 37 hearing because Health Net "prevailed" on two of the three issues raised in Plaintiffs' Motion for a Rule 37 Hearing. Health Net's argument that it prevailed on (1) whether it fabricated a computer spreadsheet and (2) whether it fabricated a project brief is without merit. First, the Court explicitly addressed Defendants' fabricated computer spreadsheet in its December 6, 2006 Opinion. The Court concluded that "Although Health Net computer programmers had created a file including use of outdated data to process claims going back to 1999, the *spreadsheet* that Health Net provided to NJ-DOBI only covered the period from July 2001 to October 2002, and the discovery in this case was obfuscated to make it look as if Health Net had only discovered its half-truths to NJ-DOBI on the eve of this Court's November 2003 Preliminary Injunction hearing, when in fact Health Net had known it all along." *See* December 6, 2006 Opinion at 11 (emphasis added). Second, the Court did not hold that Defendants prevailed on Plaintiffs' allegations of a fabricated project brief. Although a Health Net employee claimed she could not remember why she had used a date of October 22, 2002 for a project brief created in October 2003, the Court did not exonerate this backdating. Given Defendants' severe discovery abuses and lack of candor to this Court, as found in the Court's December 6, 2006 Opinion, Defendants' argument that they "prevailed" on any issues raised in the Rule 37 Hearing is entirely without merit.

The Court finds that all of the issues raised by Plaintiffs in their Rule 37/Integrity Motion were "related" and that the issues asserted in the original motion are not "distinct in all respects" from the sanctionable conduct ultimately identified by the Court. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (holding that when a fee award is reduced to exclude hours litigating claims on which a party did not succeed, the court does so only to the extent that such unsuccessful claims are "'distinct in all respects from' claims on which the part did succeed"); *see also West Virginia Univ. Hosps. v. Casey*, 898 F.2d 357, 362 (3d Cir. 1990) (excluding certain fees because they were "distinct in all respects" from the successful claim, in that they involved "two different statutes, each treating totally different subjects," while awarding fees for work on a retroactivity argument, even when rejected by the court, because it was "related to the principal issue upon which it obtained substantial relief.")

attorneys' fees for the time period July 19, 2005 to November 30, 2006,[3] accompanied by approximately 135 pages of contemporaneous time records, and $92,549.90 in expenses incurred between July 19, 2005 to November 30, 2006 as well as $653,063 in attorneys' fees for the time period prior to July 19, 2005, accompanied by contemporaneous time records, and $65,549.47 in expenses incurred prior to July 19, 2005. Sills Cummis's total fee request is $4,786,652 in attorneys' fees and $158,099.37 in expenses. Plaintiffs' counsel Pomerantz Haudek Block Grossman & Gross ("Pomerantz Haudek") requests $1,760,364.00 in attorneys' fees, accompanied by over one hundred pages of contemporaneous time records,[4] and $18,605.85 in expenses[5] for all relevant work through December 2, 2006. Plaintiffs' counsel Jonathan L. Alpert requests $32,165.00 in attorney's fees and no expenses for all relevant work through December 6,

---

[3] Sills Cummis's December 18, 2006 fee request was $4,136,531.50 in attorneys' fees for the time period from July 19, 2005 to November 30, 2006. *See* December 18, 2006 Declaration of Barbara Quackenbos at ¶11. Sills Cummis's January 9, 2007 submission revised its previous fee submission for time spent from July 19, 2005 to November 30, 2006 by eliminating 8.3 hours of work, *see* January 9, 2007 Barbara Quackenbos Affirmation at ¶18. The Court issued an April 27, 2007 Order ordering Sills Cummis to clarify its arithmetic calculations because its January 9, 2007 submission indicated that its fee submission for time spent between July 19, 2005 to November 30, 2006 was *larger*, not smaller, than the December 18, 2006 fee request for the same time period, despite stating that it had deleted hours from its request. Sills Cummis's May 4, 2007 submission clarified that it was requesting $4,133,589 in attorneys' fees for relevant work between July 19, 2005 and November 30, 2006.

[4] Pomerantz Haudek's December 18, 2006 fee request was $1,774,536.50 in attorneys' fees for all work through December 2, 2006. Pomerantz Haudek's January 9, 2007 submission revised its previous fee submission to $1,760,364.00 after deleting $14,172.50 in fees.

[5] In its December 18, 2006 and January 9, 2007 fee applications, Pomerantz Haudek submitted a total of $19,030.36 in expenses for depositions and transcripts. In response to the Court's April 27, 2007 Order ordering Pomerantz Haudek to identify the specific expenses and dates of those expenses, Pomerantz Haudek's May 4, 2007 submission revised its expense request to $18,605.85 because it had inadvertently not included credits for certain expenses. Pomerantz Haudek's May 4, 2007 submission documented the specific expenses and dates comprising the $18,605.85 expense request.

2006.

**III.     Analysis:**

**A.     Legal Standard:**

Fed. R. Civ. P. 37(b)(2) provides that, in addition to any of the sanctions authorized by the Rule, "the court *shall* require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust" (emphasis added) and attorney's fees and expenses are also authorized under Rule 37(c)(1) upon a finding that a party failed to disclose information without substantial justification.  This Court's December 6, 2006 Opinion held that Health Net "repeatedly and systemically violated discovery orders, in violation of Rule 37(b)(2), and that they improperly withheld documents in violation of Rule 37(c)(1)." *See* December 6, 2006 Opinion at 56.

To calculate attorney's fees, a court must determine the "lodestar" amount, which is reached by calculating "the appropriate billing rate for the party's attorneys as well as the number of hours those attorneys reasonably expended on the action." *Interfaith Community Organization v. Honeywell Intern, Inc.*, 426 F.3d 694, 703 (3d Cir. 2005); *see also Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000) and *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973).  A party seeking attorney's fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable. *See, e.g.*, *Interfaith Community Organization*, 426 F.3d at 703 (3d Cir. 2005); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990).  To initially satisfy this burden, "the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Interfaith*, 426

F.3d at 703. If it wishes to challenge the fee award, the opposing party must then object "with sufficient specificity" to the request. *Id.* Once the opposing party has objected, the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable.

To determine the reasonable hourly rate, the Court should look to the prevailing market rates in the community. *See Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (*citing Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984) and *Student Public Interest Research Group, Inc. v. AT & T Bell Laboratories*, 842 F.2d 1436, 1448 (3d Cir. 1988) (adopting the community market rule). In reviewing whether the number of hours in a fee application are reasonable, the Court must conduct "a thorough and searching analysis," and "it is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request. *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001). A fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, and associates," but "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Washington*, 89 F.3d at 1037-1038 (*citing Rode*, 892 F.2d at 1190). If a court believes that a fee reduction is appropriate, "it must analyze the circumstances requiring the reduction and its relation to the fee, and it must make specific findings to support its action." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000) (*quoting* the Third Circuit Task Force on Court Awarded Attorney Fees). When attorney's fees are awarded, the current market rate, defined as "the rate at the time of the fee petition," must be used. *See Lanni*

*v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).[6]

**B.     Hours and Expenses**

1.     Hourly Rate for Attorneys' Fees

Plaintiffs' counsel Sills Cummis, Pomerantz Haudek, and Jonathan Alpert submitted declarations, contemporaneous time records, and exhibits documenting their hourly rate charged.[7] Sills Cummis states that it currently charges the following rates for its Partners/Of Counsel, Associates, and Paralegals: $650/hr for Partner Barry Epstein;[8] $525/hr for Partner Stuart

---

[6] Defendants argue that Third Circuit cases pre-dating *Lanni* have held that a district court has discretion to adjust fees by using current rates or by adjusting the historical rate for present value, citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 476 (3d Cir. 1992), and that the party seeking fees "bears the burden of documenting a need to adjust for delay in payments." *Doe v. Terhune*, 121 F.Supp.2d 773, 781 (D.N.J. 2000). Whether using the *Lanni* standard or a discretionary standard, Plaintiffs' counsel have documented the need to adjust fees by using current rates.

[7] Defendants' argument that Sills Cummis incorrectly used an "inclusion by exclusion" method in determining compensable time is without merit. *See* Barbara Quackenbos's January 9, 2007 Declaration at ¶7 (stating that "Mr. Epstein and I identified compensable activities from the description, deleted noncompensable activities from the description, and used our best professional judgment and intimate knowledge of th work done on the case to include only the time spent on the compensable activities.") Ms. Quackenbos also noted that "[o]ther than deletions for noncompensable time and correcting for mis-spellings, typos and the like, we did not change the descriptions used to record the time reflected in our contemporaneous time reports." *Id.*

[8] Barbara Quackenbos noted that a large portion of the work was done by Mr. Epstein and highlighted his background: "Mr. Epstein, a Columbia Law School graduate, has been a lawyer for over 35 years, and has been involved in major national class action litigations for several decades, including for clients such as Becton Dickinson, Johnson & Johnson, and Bristol Meyers Squibb." *See* Barbara Quackenbos's December 18, 2006 Declaration at ¶9.

Feinblatt;[9] $495/hr for Partners A. Ross Pearlson[10] and James Toll; $485/hr for Thomas Demski; $475/hr for Of Counsel Barbara Quackenbos;[11] $450/hr for Of Counsel Andrew Schwartz; $425/hr for Steven Gorelick; $375/hr for Associate Michael Fried;[12] $335/hr for Associate Stefanie da Costa; $335/hr for Associate Sayuri Rajapakse; $240/hr for Debra Heindl; $235/hr for Debra Lightner; $205/hr for Andi Glazer; $200/hr for Paralegal William Dunstan; $185/hr for Paralegal Edward Colavito; $175/hr for Paralegals Shannon Bishop, Susan Hinsman, Sandra Polsky, and Heather Patrick; $165/hr for Paralegals Dante Raspa and Cecilia Hunt; $150/hr for Paralegals Justine Gilles, Sunil Tilak, Peter Calhoun, Michele LaBorda, and William Zanowitz; $135/hr for Kenneth Calhoun; $125/hr for Paralegal Sara Platt and Yolan Jambor; $100/hr for Justini Aliagia; $95/hr for Laura Dugan, Shari Stahler, and Yvonne Harmon; and $75/hr for Paralegal Robert Santiago. These are the regular rates Sills Cummis charges to paying clients, *see* Barbara Quackenbos's December 18, 2006 Declaration at ¶9. After considering the parties'

---

[9] Mr. Feinblatt is a graduate of Columbia Law School and has been involved in other class actions. *See* Barbara Quackenbos's December 18, 2006 Declaration at ¶9.

[10] Mr. Pearlson is a graduate of Harvard Law School and has been involved in other class actions. *See* Barbara Quackenbos's January 9, 2007 Affirmation at ¶9.

[11] Barbara Quackenbos noted that she performed a large portion of the work and highlighted her background: "I have been a lawyer for 18 years, having graduated from NYU Law as a Root-Tilden scholar in 1988. As a Legal Aid lawyer following law school, I was involved in prosecuting several nationwide class actions involving Social Security benefits. At Rosenman & Colin from 1994-1998, I was involved in state and federal litigation involving provider reimbursement, including for Health & Hospitals Corporation, the Greater New York Hospital Association and the Hospital Association of New York State. While at Rosenman, I worked on several ERISA matters with nationwide implications, including drafting an amicus brief for the winning side in the well-known United States Supreme Court *Travelers* ERISA preemption case." *See* Barbara Quackenbos's December 18, 2006 Declaration at ¶9.

[12] Mr. Fried is a 1994 graduate of George Washington University Law School. *See* Barbara Quackenbos's December 18, 2006 Declaration at ¶9.

submissions, the Court finds that the hourly rates submitted by Sills Cummis are reasonable and consistent with current market rates.[13]

Pomerantz Haudek states that it charges the following rates for its Partners/Of Counsel and Associates: $600/hr for Partner D. Brian Hufford; $500/hr for Partner Robert Axelrod; $400/hr for Of Counsels Robert Clark and Laura Perrone; $325/hr for Of Counsel Steven Nathan; $425/hr for Associate Steven Walsh; $380/hr for Associate Jason Cowart; $360/hr for Associate Susan Weiswasser; and $325/hr for Associate Carol Fine.[14] Attorney Jonathan Alpert states that he charges $350/hr. The Court finds that the hourly rates of Pomerantz Haudek and Attorney Alpert are reasonable and consistent with current market rates.

2.     Calculation of Attorneys' Hours and Expenses

The Court has carefully and thoroughly considered all of Defendants' objections in its line-by-line review of Plaintiffs' counsel's billing records in support of its fee requests, *see Evans*

---

[13] Sills Cummis states that "our rates are reasonable and reflect our experience." *See* Barbara Quackenbos's December 18, 2006 Declaration at ¶9. Neither Sills Cummis or Defendants have submitted any evidence of the prevailing market rate for the services rendered, and Defendants do not object to Sills Cummis's assertion that its rates are consistent with the current market rate. In the absence of evidence of the prevailing market rate, and the absence of any objection to the charged rate, the Court will assume that the rates charged are the prevailing market rates. *See Board of Trustees of the International Union of Operating Engineers, Local 825 Pension*, 2007 WL 556876, *6 (D.N.J February 13, 2007); *Neyer, Tiseo & Hindo, Ltd. v. Russell*, 1994 WL 15817, *2 (E.D.Pa. Apr. 29, 1994) (finding that where neither party has submitted any evidence of the prevailing market rates, the Court would assume that the charged rates actually were the prevailing rates).

[14] In his declaration, Attorney Brian Hufford from Pomerantz Haudek noted several cases where courts have approved the firm's rates. *See, e.g., In re Worldcom, Inc. Sec. Litig*, Master File 02 Civ. 3288 (DLC); *Salomon AT&T v. Salomon Smith Barney*, 02 CV 6801 (GEL) (S.D.N.Y. Aug. 11, 2006); *In re Elan Corp. Sec. Litig*., No. 02-CV-0865 (RMB) (S.D.N.Y. Apr. 19, 2005); *In re Safety-Kleen Corp. Stockholders Litig., C.A.* No. 3:0-CV-736-17 (D.S.C. 2004); and *In re Livent, Inc., Noteholders Sec. Litig.* (S.D.N.Y. 2003).

*v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001). In their response to Plaintiffs' counsel's fee application submitted to this Court pursuant to the December 6, 2006 Order, Defendants used a five-issue rubric to identify general objections to each of Plaintiffs' counsel's entries.[15] Unless otherwise noted, the Court does not grant these general objections.[16] Defendants' argument that Plaintiffs' counsel should have apportioned their time between the *Wachtel* and *McCoy* cases for the time period July 19, 2005 to November 3, 2006 is without

---

[15] Defendants wrote letters next to each of Plaintiffs' counsel's time entries to correspond with general objections. The general objections and corresponding letters are: "A: This entry reflects work that is outside the scope of the December 6 Order. As a result, the requested fee associated with this entry must be rejected; B: This entry's description is vague and/or lacks sufficient specificity to assess whether it reflects otherwise compensable work under the December 6 Order. As a result, the requested fee associated with this entry must be rejected; C: This entry reflects work that has been billed at a rate that is not justified by the type of work performed. (For example, paralegal work that is billed at an attorney's rate or non-legal administrative work that is billed at a paralegal's rate). As a result, the requested fee associated with this entry must be rejected or, at a minimum, if not already waived, reduced to a rate appropriate for the task performed if otherwise compensable under the December 6 Order; D: This entry reflects a "block-billing" format in which multiple tasks are combined in a single "block" of time for that day with no way of determining the amount of time spent on any individual task. Thus, in entries with a mixture of (a) work that appears compensable under the December 6 Order and (b) work that is not compensable under the December 6 Order, it is impossible to determine what portions should be counted. As a result, the requested fee associated with this entry must be rejected. (To the extent any exist, entries that reflect a block-billing format but consist entirely of compensable work under the December 6 Order have not been objected to as part of this exercise); E: This entry reflects content, or appears in a format, that brings into question its accuracy, reliability, and/or credibility to such an extent that it must be rejected. Examples of this type of entry include, but are not limited to, those that reflect (a) duplicative tasks, (b) excessive hours claimed for task(s), and for (c) unusual and unjustified repetition in entry narratives or hours claimed."

[16] Defendants included general objections to most of Plaintiffs' counsel's time entries by writing A, B, C, D, or E—corresponding to the five-issue rubric—next to most of counsel's time entries. Although the Court is not specifically addressing each of the hundreds of general objections that Defendants made by writing a letter or letters next to each of counsel's time entries, the Court has carefully analyzed each time entry to determine whether the requested fee falls within the Court's December 6, 2006 Opinion and Order.

merit.[17]

a.      *Plaintiffs' counsel Jonathan Alpert*:

The Court awards Plaintiffs' counsel Jonathan Alpert $32,165.00 for his 91.9 hours of relevant work, through December 6, 2006, charged at $350/hr.[18]

---

[17] Under ERISA, the Court in its discretion may award attorneys' fees to a prevailing party in an action. *See* 29 U.S.C. §1132(g)(1). Defendants argue that Plaintiffs' counsel should apportion its requested fees between the *McCoy* and *Wachtel* case because "[i]n the event that Plaintiffs obtain a favorable judgment in one, but not the other, case, they would be entitled to seek attorneys fees as the prevailing party–for that case only." *See* Defendants' December 28, 2006 submission at 9. Because the *Wachtel* and *McCoy* cases were consolidated for pre-trial purposes on July 23, 2003 and for trial on August 5, 2004, Plaintiffs' counsel only needs to apportion its time between the two cases for hours worked before July 23, 2003. If Plaintiffs prevail on only one case but not the other, any hours worked by Plaintiffs' counsel after July 23, 2003 that were not apportioned between *McCoy* and *Wachtel* in counsel's Rule 37 fee application will be deducted from the total prevailing party award since the cases were consolidated and the same work was done for both cases. In those instances when Plaintiff's counsel specifically apportioned their time between *McCoy* and *Wachtel* for their Rule 37 fee application, the Court will only deduct time spent on the specific prevailing case for the prevailing party award.
    Mr. Alpert is not seeking fees for any hours before July 23, 2003, and therefore he does not have to apportion his time. Although Sills Cummis's fee application for time spent between July 19, 2005 and November 30, 2006 does not apportion time between the *McCoy* and *Wachtel* case, the two cases were consolidated by July 19, 2005, and an apportioned fee application is not necessary. Sills Cummis's January 9, 2007 fee application for time spent prior to July 19, 2005 contains a separate request for the *McCoy* and *Wachtel* case, and therefore Sills Cummis properly specified its time spent on each case prior to the July 23, 2003 case consolidation. In response to the Court's April 27, 2007 Order, Pomerantz Haudek submitted a May 4, 2007 submission apportioning its time between the *McCoy* and *Wachtel* case for time spent prior to the July 23, 2003 case consolidation.

[18] The Court has conducted a line-by-line review of Plaintiffs' counsel Jonathan Alpert's submitted fee request. *See Evans*, 273 F.3d at 362. Attorney Alpert's submitted time records have "sufficient specificity," *see Washington*, 89 F.3d at 1037-1038, and appropriately fall within the Court's December 6, 2006 Opinion and Order awarding reasonable attorneys' fees and expenses incurred in connection with (1) the Rule 37/Integrity hearing and all briefing in connection therein and (2) each of Plaintiffs' motions brought to invoke discovery compliance after an Order of the Magistrate Judge or the Court had previously so ordered. The Court has considered Health Net's line-by-line objections in Exhibit D of their December 28, 2006 submission, *see* supra note 15, as well as Health Net's arguments in its briefs, and concludes that these objections are without merit.

b.      *Plaintiffs' counsel Pomerantz Haudek*:

The Court awards Plaintiffs' counsel Pomerantz Haudek $1,760,364.00 in fees and $18,605.85 for all relevant work (as defined herein) through December 2, 2006.[19]  This includes: $979,890 for Partner Brian Hufford's 1,633.15 hours at $600/hr; $344,250 for Partner Robert Axelrod's 688.50 hours at $500/hr; $30,600 for Of Counsel Robert Clark's 76.50 hours at $400/hr; $9,700 for Of Counsel Laura Perrone's 24.25 hours at $400/hr; $1,300 for Of Counsel Steven Nathan's 4 hours at $325/hr; $3,400 for Associate Steven Walsh's 8 hours at $425/hr; $2,280 for Associate Jason Cowart's 6 hours at $380/hr; $219,294 for Associate Susan Weiswasser's 609.15 hours at $360/hr; and $169,650 for Associate Carol Fine's 522 hours at $325/hr.

c.      *Plaintiffs' counsel Sills Cummis:*

Plaintiffs' counsel Sills Cummis submitted a fee application for attorneys' fees for time spent between July 19, 2005 and November 30, 2006 for $4,133,589.00 and for time spent prior to July 19, 2005 for $653,063, for a total attorneys' fee request of $4,786,652.  After a careful line-by-line examination of Sills Cummis' fee request, the Court makes the following adjustments:

---

[19] The Court has conducted a line-by-line review of Plaintiffs' counsel Pomerantz Haudek's submitted fee requests.  *See Evans*, 273 F.3d at 362.  The submitted time records have "sufficient specificity," *see Washington*, 89 F.3d at 1037-1038, and appropriately fall within the Court's December 6, 2006 Opinion and Order awarding reasonable attorneys' fees and expenses incurred in connection with (1) the Rule 37/Integrity hearing and all briefing in connection therein and (2) each of Plaintiffs' motions brought to invoke discovery compliance after an Order of the Magistrate Judge or the Court had previously so ordered.  The Court has considered Health Net's line-by-line objections in Exhibit C of their December 28, 2006 submission, *see* supra note 15, as well as Health Net's arguments in its briefs, and concludes that these objections are without merit.

- Increasing Sills Cummis' Request by $2,509.50 for Attorney Fried's Time Worked before July 19, 2005: The Court issued a May 8, 2007 Order ordering Sills Cummis to clarify the current market rate for Associates Michael Fried, Stefanie da Costa, and Sayuri Rajapakse because Sills Cummis used a different hourly rate for the fee calculations of these associates for time prior to July 19, 2005 than for time between July 19, 2005 and November 30, 2006. Sills Cummis's May 10, 2007 submission clarified that the current hourly rate for Associate Fried is $375/hr, for Associate da Costa is $335/hr, and for Associate Rajapakse is $335/hr. As previously discussed, *see supra* Part III.A, Third Circuit case law supports the use of current market rates when calculating attorneys' fees under a theory of "delay compensation." *See Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001). The Court will therefore use the current market rate to calculate the attorneys' fees for Associate Fried for all of his time on this case, raising Sills Cummis's fee request by $2,509.50.[20] Since Ms. da Costa received a higher hourly rate for time prior to July 19, 2005[21] and Ms. Rajapakse was a contract attorney and not a full-time associate prior to July 19, 2005,[22] the Court will not use their current market rates for the time prior to July 19, 2005.
- Decreasing Sills Cummis' Request by $30 for Attorney Pearlman's Time between July 19, 2005 and November 30, 2006: Sills Cummis' fee summary for the time period July 19, 2005 to November 30, 2006, attached as Exhibit A to its May 4, 2007 submission, incorrectly states that the total fees for Attorney A. Ross Pearlson are $112,246.50; Attorney Pearlson worked 226.7 hours at $495/hr, which equals $112,216.50. The Court will therefore decrease Sills Cummis' request by $30 for Attorney Pearlman's time between July 19, 205 and November 30, 2006.
- Decreasing Sills Cummis' Request by $34,482.50 for Hours Relating to Plaintiffs' Motion concerning the word-searchability of e-mails and attachments Health Net produced from back-up tapes: In its fee application, Sills Cummis requested fees for work relating to Plaintiffs' motion concerning the word-searchability of e-mails

---

[20] Mr. Fried billed 167.3 hours for time prior to July 19, 2005. The difference between these hours billed at $375, his current hourly rate, and $360, the rate Sills Cummis used for his time prior to July 19, 2005, is $2,509.50.

[21] As noted above, *Lanni* requires the Court to use the current market rate under a theory of "delay compensation." Because this "delay compensation" theory does not apply when an attorney received a higher hourly rate during an earlier time period, the Court will use Ms. da Costa's higher hourly rate for the earlier time period. Sills Cummis's May 10, 2007 submission stated that her hourly rate was decreased after July 19, 2005 because she "began working primarily on a large matter for a public institutional client."

[22] It is not appropriate to use the current market rate for all of an associate's time worked on a case when the attorney was a contract attorney, and not an associate, for some of that time.

and attachments Health Net produced from back-up tapes.[23] This work does not fall within the Court's December 6, 2006 Opinion and Order because it does not involve (1) the Rule 37/Integrity hearing and all briefing in connection therein or (2) a motion brought by Plaintiffs to invoke discovery compliance after an Order of the Magistrate Judge or the Court had previously so ordered. The Court accordingly deletes 42.9 hours of Of Counsel Barbara Quackenbos (at $475/hr) and 21.7 hours of Partner Barry Epstein (at $650/hr), for a total of $34,482.50, from Sills Cummis' total fee request.[24]

The Court therefore approves a total attorneys' fee award of $4,754,649.00[25] for Sills

---

[23] After the Court's November 8, 2006 Order required the parties to attend a meet and confer session and to produce a joint submission resolving the issues surrounding the production of searchable e-mails and attachments, the parties submitted a November 20, 2006 Consent Order in which Defendants agreed to produce all e-mails and attachments in word searchable electronic format that they were producing pursuant to the Court's May 5, 2006 Order. The Court's March 7, 2007 Order denied Plaintiffs' January 22, 2007 "Motion for Health Net's E-mail Production in Word Searchable Format from the Inception of the Litigation" because (1) Plaintiffs' document requests, served between January 22, 2002 and September 21, 2004, never specified the format of production or requested the production of these documents in word-searchable format; and (2) Plaintiffs have the ability to create "word searchable" files of these documents because they possess images of the documents.

[24] Pursuant to the Court's April 27, 2007 Order, Sills Cummis submitted an affirmation and the total hours claimed in its original Fee Applications for work related to the word-searchability motion.

[25] This includes: $1,295,645 for Partner Barry Epstein's 1993.3 hours at $650/hr; $116,497.50 for Partner Stuart Feinblatt's 221.9 hours at $525/hr; $126,027 for Partner A. Ross Pearlson's 254.6 hours at $495/hr; $14,949 for Partner James Toll's 30.2 hours at $495/hr; $2,085.50 for Thomas Demski's 4.3 hours at $485/hr; $1,291,097.5 for Of Counsel Barbara Quackenbos's 2718.1 hours at $475/hr; $24,075 for Of Counsel Andrew Schwartz's 53.5 hours at $450/hr; $510 for Steven Gorelick's 1.2 hours at $425/hr; $809,175 for Associate Michael Fried's 2157.8 hours at $375/hr; $87,258.50 for Associate Stefanie da Costa's 67.9 hours at $335/hr and 179.2 hours at $360/hr; $50,644.50 for Associate Sayuri Rajapakse's 57.9 hours at $335/hr and 130.2 hours at $240/hr; $1872 for Debra Heindl's 7.8 hours at $240/hr; $235 for Debra Lightner's 1 hour at $235/hr; $19,946.50 for Andi Glazer's 97.3 hours at $205/hr; $14,620 for Paralegal William Dunstan's 73.1 hours at $200/hr; $1,239.50 for Paralegal Edward Colavito's 6.7 hours at $185/hr; $333,392.50 for Paralegal Shannon Bishop's 1905.1 hours at $175/hr; $63,140 for Paralegal Susan Hinsman's 360.8 hours at $175/hr; $13,160 for Paralegal Sandra Polsky's 75.2 hours at $175/hr; $385 for Paralegal Heather Patrick's 2.2 hours at $175/hr; $165 for Cecilia Hunt's 1 hour at $165/hr; $226,974 for Paralegal Dante Raspa's 1375.6 hours at $165/hr; $137,205 for Paralegal Justine Gilles's 914.7 hours at $150/hr; $54,435 for Paralegal

14

Cummis's work, as defined in this Court's December 6, 2006 Opinion, through November 30, 2006.[26] A total expense award of $158,099.37 through November 30, 2006 is also approved.

## IV. Conclusion

For the reasons stated above, Defendants shall **by July 3, 2007** pay Jonathan Alpert $32,165.00 for attorney's fees; Pomerantz Haudek $1,760,364.00 in attorneys' fees and $18,605.85 in expenses; and Sills Cummis $4,754,649.00 in attorneys' fees and $158,099.37 in expenses. An appropriate order will issue.

/s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.

---

Sunil Tilak's 362.9 hours at $150/hr; $5895 for Paralegal Peter Calhoun's 39.3 hours at $150/hr; $9030 for Michele LaBorda's 60.2 hours at $150/hr; $225 for William Zanowitz's 1.5 hours at $150/hr; $945 for Kenneth Calhoun's 7 hours at $135/hr; $17,275 for Paralegal Sara Platt's 138.2 hours at $125/hr; $5462.50 for Peter Walls' 43.7 hours at $125/hr; $1150 for Yolan Jambor's 9.2 hours at $125/hr; $160 for Justini Aliagia's 1.6 hours at $100/hr; $2460.50 for Laura Dugan's 25.9 hours at $95/hr; $16,273.50 for Shari Stahler's 171.3 hours at $95/hr; $1026 for Yvonne Harmon's 10.8 hours at $95/hr; and $10,012.50 for Paralegal Robert Santiago's 133.5 hours at $75/hr.

[26] The Court has conducted a line-by-line review of Plaintiffs' counsel Sills Cummis's submitted fee requests. *See Evans*, 273 F.3d at 362. The submitted time records have "sufficient specificity," *see Washington*, 89 F.3d at 1037-1038. The Court has considered Health Net's line-by-line objections in Exhibit C of its December 28, 2006 submission and Exhibit B and C of its January 18, 2007 submission, *see* supra note 15, as well as Health Net's arguments in its briefs. Other than as indicated in this Opinion, these objections are without merit. In addition to Health Net's general objections using the five-issue rubric, Health Net argues that issues included in Sills Cummis's fee applications are outside the scope of the December 6, 2006 Order, including Sills Cummis's correspondence with the New Jersey Department of Banking and Insurance ("NJDOBI"); organization of Defendants' late-discovery by legal assistants (instead of by administrative assistants); work related to the Nancy Starts and Franklin Tom deposition; Rule 60 research; and entry of documents into Summation, Plaintiffs' document database. The Court finds that all of the work on these issues were performed by appropriate personnel and appropriately fall within the Court's December 6, 2006 Opinion and Order awarding reasonable attorneys' fees and expenses incurred in connection with (1) the Rule 37/Integrity hearing and all briefing in connection therein and (2) each of Plaintiffs' motions brought to invoke discovery compliance after an Order of the Magistrate Judge or the Court had previously so ordered.